THE WARNER LAW FIRM
PAUL T. WARNER
6363 Woodway, Suite 910
Houston, TX 77057
Telephone: (713) 783-7077
Facsimile: (713) 583-9196

LAW OFFICES OF DAVID M. GOLDSTEIN
DAVID M. GOLDSTEIN (118764)
10535 Foothill Blvd., Suite 300
Rancho Cucamonga, CA 91730
Telephone: (909) 466-4757
Facsimile: (909) 980-5525

Attorneys for Plaintiff

FILED
CLERK, U.S. DISTRICT COURT

MAY - 7 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY DURGIN, Derivatively on Behalf of AMGEN, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KEVIN W. SHARER, GEORGE J. MORROW, DENNIS M. FENTON, BRIAN MCNAMEE, ROGER M. PERLMUTTER, DAVID BALTIMORE, GILBERT S. OMENN, JUDITH C. PELHAM, FREDERICK W. GLUCK, JERRY D. CHOATE, J. PAUL REASON, FRANK J. BIONDI, JR., LEONARD D. SCHAEFFER, FRANK C. HERRINGER, RICHARD D. NANULA, EDWARD V. FRITZKY, and FRANKLIN P. JOHNSON, JR., <br><br> Defendants, <br><br> - and - <br><br> AMGEN, INC., a Delaware corporation, <br><br> Nominal Defendant. | Case No. CV07-03001 DSF (AGRx) <br><br> (Derivative Action) <br><br> VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATIONS OF SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5 PROMULGATED THEREUNDER, AND BREACHES OF FIDUCIARY DUTY <br><br><br><br><br><br> DEMAND FOR JURY TRIAL <br><br> DOCKETED ON CM <br><br> MAY 14 2007 <br><br> BY                     019 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

5/7/2007 3:04:25 PM  Receipt #: 95815
Cashier : RSINGH [LA 1-1]
Paid by: JANNEY AND JANNEY
2:CV07-03001
2007-086900
Amount :                    5 - Civil Filing Fee(1)
2:CV07-03001                          $60.00
2007-510000
Amount :                   11 - Special Fund F/F(1)
                                     $190.00
Payment : Filing Fee - Special(1)

1    Plaintiff, by her attorneys, submits this Verified Shareholder Derivative Complaint (the

2    "Complaint") against the defendants named herein.

3                          **NATURE AND SUMMARY OF THE ACTION**

4        1.      This is a shareholder derivative action brought by a shareholder of Amgen, Inc.

5    ("Amgen" or the "Company") on behalf of the Company against certain of its officers and directors

6    seeking to remedy defendants' violations of state and federal law, including violations of Section

7    10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated

8    thereunder and breaches of fiduciary duties that occurred between May 2005 and the present (the

9    "Relevant Period") and that have caused substantial losses to Amgen and other damages, such as to

10   its reputation and goodwill.

11       2.      Amgen markets human therapeutic products for supportive cancer care, nephrology,

12   inflammation and oncology.  The Company's principal products include Epogen and Aranesp, which

13   are used to stimulate red blood cell production for the treatment of anemia brought on by cancer.

14   These drugs are also typically prescribed by doctors for the "off-label" treatment of anemia

15   developed by cancer patients undergoing chemotherapy.

16       3.      During the Relevant Period, Amgen, under defendants' direction, marketed Epogen

17   and Aranesp to doctors with an emphasis on its off-label uses.  As a result, the Company sold several

18   hundred million dollars worth of the drugs annually in connection with off-label prescriptions.

19       4.      In October 2006, a group of researchers halted a clinical study of head and neck

20   cancer patients treated with Aranesp because more deaths occurred in patients taking Aranesp than

21   in those taking a placebo.   Defendants did not disclose these results to the public.   On

22   February 16, 2007, a publication called *The Cancer Letter* published an article about the results of

23   the study.  On March 9, 2007, the Food and Drug Administration ("FDA") mandated a "black box"

24   warning regarding the off-label use of Aranesp and Epogen.

25       5.      These revelations caused Amgen's market capitalization to decline by over $20

26   billion.   Certain of the defendants not only improperly directed Amgen to issue misleading

27   statements concerning Aranesp and Epogen, but also sold over $221 million of their personally held

28   shares.

- 1 -

6.    Moreover, while Amgen's stock was artificially inflated because of the improper disclosures concerning Aranesp and Epogen, defendants directed Amgen to buyback over $7.7 billion of its own shares at artificially inflated prices in violation of the Exchange Act.

**JURISDICTION AND VENUE**

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C §1331 in that plaintiff's claims arise in part out of the laws of the United States, including the Exchange Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

8.    This Court also has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

9.    This Court retains general jurisdiction over each named defendant who is a resident of California.   Additionally, this Court has specific jurisdiction over each named non-resident defendant because these defendants maintain sufficient minimum contacts with California to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Amgen maintains operations in California and because the allegations contained herein are brought derivatively on behalf of Amgen, defendants' conduct was purposefully directed at California. Defendants' conduct arose out of California, where Amgen maintains its corporate headquarters. Finally, exercising jurisdiction over named nonresident defendants is reasonable.

10.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, including the defendants' primary participation in the wrongful acts detailed herein, aiding and abetting, and conspiracy in violation of fiduciary duties owed to Amgen, occurred in substantial part in this District. Finally, defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

# THE PARTIES

11.     Plaintiff Judy Durgin is, and was at times relevant hereto, an owner and holder of Amgen common stock.  Plaintiff is a citizen of Vermont.

12.     Nominal defendant Amgen is a corporation organized and existing under the laws of the state of Delaware with its headquarters located at One Amgen Center Drive, Thousand Oaks, California.  Amgen discovers, develops, manufactures, and markets therapeutics based on advances in cellular and molecular biology.

13.     Defendant Kevin W. Sharer ("Sharer") is an Amgen director and has been since November 1992.  Sharer is also Chief Executive Officer ("CEO") and President and has been since May 2000. Sharer has been Chairman of the Board of Directors (the "Board") since January 2001. Sharer was President and Chief Operating Officer from October 1992 to May 2000.  Because of Sharer's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Sharer participated in the issuance of improper statements, including the preparation of the improper press releases and Securities and Exchange Commission ("SEC") filings and approval of other statements made to the press, securities analysts and Amgen shareholders.  Amgen paid Sharer the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Restricted Stock Awards | Approximate Value of Securities Underlying Options ($) | Securities Underlying Options | All Other Compensation |
|-----------|-------------|--------|-------|-------------------------|--------------------------------------------------------|-------------------------------|------------------------|
| Sharer    | 2006        | $1,482,692 | -        | $10,413,810 | 6,697,199 | -       | $956,818 |
|           | 2005        | $1,390,385 | $4,500,000 | -           | -         | 225,000 | $731,918 |

During the Relevant Period, Sharer sold 1,221,852 shares of Amgen stock for proceeds of $98,231,746.59.  Defendant Sharer is a citizen of California.

14.     Defendant George J. Morrow ("Morrow") is Amgen's Executive Vice President,

- 3 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   Global Commercial Operations and has been since April 2003.  Morrow was Executive Vice

2   President of Worldwide Sales and Marketing from January 2001 to April 2003.  Because of

3   Morrow's positions, he knew, consciously disregarded, was reckless and grossly negligent in not

4   knowing or should have known the adverse, non-public information about the business of Amgen,

5   specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances,

6   markets and present and future business prospects, via access to internal corporate documents,

7   conversations and connections with other corporate officers and employees, attendance at

8   management meetings and via reports and other information provided to him in connection

9   therewith. During the Relevant Period, Morrow participated in the issuance of improper statements,

10   including the preparation of the improper press releases and SEC filings and approval of other

11   statements made to the press, securities analysts and Amgen shareholders.  Amgen paid Morrow the

12   following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Restricted Stock Awards | Approximate Value of Securities Underlying Options ($) | Securities Underlying Options | All Other Compensation |
|-----------|-------------|--------|-------|------------------------|--------------------------------------------------------|-------------------------------|------------------------|
| Morrow | 2006 | $928,596 | $200,000 | $3,471,270 | 2,037,918 | - | $499,221 |
|        | 2005 | $887,385 | $1,800,000 | - | - | 75,000 | $3,632,488 |

17   During the Relevant Period, Morrow sold 303,335 shares of Amgen stock for proceeds of

18   $24,604,492. Defendant Morrow is a citizen of California.

19       15.    Defendant Dennis M. Fenton ("Fenton") is Amgen's Executive Vice President,

20   Operations and has been since May 2003.  Fenton was Executive Vice President from March 2000 to

21   May 2003 and held various executive positions with Amgen from 1985 to March 2000.  Because of

22   Fenton's positions, he knew, consciously disregarded, was reckless and grossly negligent in not

23   knowing or should have known the adverse, non-public information about the business of Amgen,

24   specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances,

25   markets and present and future business prospects, via access to internal corporate documents,

26   conversations and connections with other corporate officers and employees, attendance at

27   management meetings and via reports and other information provided to him in connection

28   therewith. During the Relevant Period, Fenton participated in the issuance of improper statements,

- 4 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    including the preparation of the improper press releases and SEC filings and approval of other

2    statements made to the press, securities analysts and Amgen shareholders.  Amgen paid Fenton the

3    following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Restricted Stock Awards | Approximate Value of Securities Underlying Options ($) | Securities Underlying Options | All Other Compensation |
|-----------|-------------|--------|-------|------------------------|-------------------------------------------------------|-------------------------------|------------------------|
| Fenton    | 2006        | $849,289 | -         | $3,805,755 | 2,077,952 | -      | $239,545 |
|           | 2005        | $766,308 | $1,210,000 | -          | -         | 75,000 | $192,948 |

8    During the Relevant Period, Fenton sold 294,642 shares of Amgen stock for proceeds of

9    $21,442,205.87.  Defendant Fenton is a citizen of California.

10        16.    Defendant Brian McNamee ("McNamee") is Amgen's Senior Vice President, Human

11    Resources and has been since June 2001.  Because of McNamee's positions, he knew, consciously

12    disregarded, was reckless and grossly negligent in not knowing or should have known the adverse,

13    non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose

14    serious risks to cancer patients, as well as its finances, markets and present and future business

15    prospects, via access to internal corporate documents, conversations and connections with other

16    corporate officers and employees, attendance at management meetings and via reports and other

17    information provided to him in connection therewith.  During the Relevant Period, McNamee

18    participated in the issuance of improper statements, including the preparation of the improper press

19    releases and SEC filings and approval of other statements made to the press, securities analysts and

20    Amgen shareholders.  During the Relevant Period, McNamee sold 166,485 shares of Amgen stock

21    for proceeds of $13,462,105.15.  Defendant McNamee is a citizen of California.

22        17.    Defendant Roger M. Perlmutter ("Perlmutter") is Amgen's Executive Vice President

23    of Research and Development and has been since January 2001.  Because of Perlmutter's position,

24    he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have

25    known the adverse, non-public information about the business of Amgen, specifically, that Aranesp

26    and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and

27    future business prospects, via access to internal corporate documents, conversations and connections

28    with other corporate officers and employees, attendance at management meetings and via reports and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

other information provided to him in connection therewith. During the Relevant Period, Perlmutter participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and Amgen shareholders. Amgen paid Perlmutter the following compensation:

| Defendant | Fiscal Year | Salary | Bonus | Restricted Stock Awards | Approximate Value of Securities Underlying Options ($) | Securities Underlying Options | All Other Compensation |
|-----------|-------------|--------|-------|-------------------------|---------------------------------------------------------|-------------------------------|------------------------|
| Perlmutter | 2006 | $883,769 | $200,000 | $3,471,270 | 2,037,918 | - | $2,021,554 |
| | 2005 | $846,058 | $1,500,000 | - | - | 75,000 | $1,884,782 |

During the Relevant Period, Perlmutter sold 149,979 shares of Amgen stock for proceeds of $12,021,773.15. Defendant Perlmutter is a citizen of Washington.

18.    Defendant David Baltimore ("Baltimore") is an Amgen director and has been since June 1999. Baltimore is a member of the Audit Committee and the Corporate Responsibility and Compliance Committee ("Corporate Committee") and has been since 2005. Because of Baltimore's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Baltimore participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and Amgen shareholders. During the Relevant Period, Baltimore sold 30,000 shares of Amgen stock for proceeds of $2,489,100. Defendant Baltimore is a citizen of California.

19.    Defendant Gilbert S. Omenn ("Omenn") is an Amgen director and has been since January 1987. Omenn is a member of the Audit Committee and has been since 2003 and was a member of the committee from 1994 to 2001. Omenn is also a member of the Corporate Committee and has been since 2005. Because of Omenn's positions, he knew, consciously disregarded, was

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.   During the Relevant Period, Omenn participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and Amgen shareholders.  During the Relevant Period, Omenn sold 24,805 shares of Amgen stock for proceeds of $1,736,517.70.  Defendant Omenn is a citizen of Michigan.

20.    Defendant Judith C. Pelham ("Pelham") is an Amgen director and has been since May 1995.  Pelham is a member of the Audit Committee since 2003 and was a member of the committee from 1998 to 2001.  Pelham is also a member of the Corporate Committee and has been since 2005.  Because of Pelham's positions, she knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith.  During the Relevant Period, Pelham participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and Amgen shareholders.  During the Relevant Period, Pelham sold 16,000 shares of Amgen stock for proceeds of $1,324,320.  Defendant Pelham is a citizen of Michigan.

21.    Defendant Frederick W. Gluck ("Gluck") is an Amgen director and has been since February 1998.  Gluck is a member of the Compensation and Management Development Committee ("Compensation Committee") and has been since 2003 and was a member of the committee from 1999 to 2001.   Because of Gluck's positions, he knew, consciously disregarded, was reckless and

- 7 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  grossly negligent in not knowing or should have known the adverse, non-public information about

2  the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients,

3  as well as its finances, markets and present and future business prospects, via access to internal

4  corporate documents, conversations and connections with other corporate officers and employees,

5  attendance at Board meetings and committees thereof and via reports and other information provided

6  to him in connection therewith.  During the Relevant Period, Gluck participated in the issuance of

7  improper statements, including the preparation of the improper press releases and SEC filings and

8  approval of other statements made to the press, securities analysts and Amgen shareholders.

9  Defendant Gluck is a citizen of California.

10          22.     Defendant Jerry D. Choate ("Choate") is an Amgen director and has been since

11  August 1998.  Choate is Chairman of the Compensation Committee and has been since 2004 and has

12  been a member of the committee since 2003 and was a member of the committee from 2000 to 2001.

13  Choate was a member of the Audit Committee in 2004.  Because of Choate's positions, he knew,

14  consciously disregarded, was reckless and grossly negligent in not knowing or should have known

15  the adverse, non-public information about the business of Amgen, specifically, that Aranesp and

16  Epogen pose serious risks to cancer patients, as well as its finances, markets and present and future

17  business prospects, via access to internal corporate documents, conversations and connections with

18  other corporate officers and employees, attendance at Board meetings and committees thereof and

19  via reports and other information provided to him in connection therewith.  During the Relevant

20  Period, Choate participated in the issuance of improper statements, including the preparation of the

21  improper press releases and SEC filings and approval of other statements made to the press,

22  securities analysts and Amgen shareholders.  Defendant Choate is a citizen of California.

23          23.     Defendant J. Paul Reason ("Reason") is an Amgen director and has been since

24  January 2001.  Reason is a member of the Compensation Committee and has been since 2003 and a

25  member of the Corporate Committee and has been since 2005.  Because of Reason's positions, he

26  knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have

27  known the adverse, non-public information about the business of Amgen, specifically, that Aranesp

28  and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and

- 8 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   future business prospects, via access to internal corporate documents, conversations and connections

2   with other corporate officers and employees, attendance at Board meetings and committees thereof

3   and via reports and other information provided to him in connection therewith.  During the Relevant

4   Period, Reason participated in the issuance of improper statements, including the preparation of the

5   improper press releases and SEC filings and approval of other statements made to the press,

6   securities analysts and Amgen shareholders.  Defendant Reason is a citizen of District of Columbia.

7        24.     Defendant Frank J. Biondi, Jr. ("Biondi") is an Amgen director and has been since

8   January 2002.  Biondi is Chairman of the Audit Committee and has been since 2003.  Because of

9   Biondi's positions, he knew, consciously disregarded, was reckless and grossly negligent in not

10  knowing or should have known the adverse, non-public information about the business of Amgen,

11  specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances,

12  markets and present and future business prospects, via access to internal corporate documents,

13  conversations and connections with other corporate officers and employees, attendance at Board

14  meetings and committees thereof and via reports and other information provided to him in

15  connection therewith.  During the Relevant Period, Biondi participated in the issuance of improper

16  statements, including the preparation of the improper press releases and SEC filings and approval of

17  other statements made to the press, securities analysts and Amgen shareholders.  Defendant Biondi is

18  a citizen of California.

19       25.     Defendant Leonard D. Schaeffer ("Schaeffer") is an Amgen director and has been

20  since March 2004.  Schaeffer is Chairman of the Corporate Committee and has been since 2005 and

21  a member of the Compensation Committee and has been since 2005.  Because of Schaeffer's

22  positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or

23  should have known the adverse, non-public information about the business of Amgen, specifically,

24  that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances, markets and

25  present and future business prospects, via access to internal corporate documents, conversations and

26  connections with other corporate officers and employees, attendance at Board meetings and

27  committees thereof and via reports and other information provided to him in connection therewith.

28  During the Relevant Period, Schaeffer participated in the issuance of improper statements, including

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and Amgen shareholders. Defendant Schaeffer is a citizen of Massachusetts.

26. Defendant Frank C. Herringer ("Herringer") is an Amgen director and has been since May 2004. Herringer is a member of the Audit Committee and has been since 2005. Because of Herringer's positions he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients s, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Herringer participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and Amgen shareholders. Defendant Herringer is a citizen of California.

27. Defendant Richard D. Nanula ("Nanula") was Executive Vice President and Chief Financial Officer from August 2001 to April 2007. Because of Nanula's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Nanula participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and Amgen shareholders. Amgen paid Nanula the following compensation:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| Defendant | Fiscal Year | Salary | Bonus | Restricted Stock Awards | Approximate Value of Securities Underlying Options ($) | Securities Underlying Options | All Other Compensation |
|-----------|-------------|--------|-------|-------------------------|-----------------------------------------------------|-------------------------------|------------------------|
| Nanula | 2006 | $812,250 | - | $3,689,004 | 2,037,918 | - | $229,957 |
|  | 2005 | $766,308 | $1,210,000 | - | - | 75,000 | $176,946 |

During the Relevant Period, Nanula sold 169,413 shares of Amgen stock for proceeds of $12,473,221.52. Defendant Nanula is a citizen of California.

28.      Defendant Edward V. Fritzky ("Fritzky") was an Amgen director from July 2002 to May 2005.  Because of Fritzky's position, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Fritzky participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and Amgen shareholders.  During the Relevant Period, Fritzky sold 356,140 shares of Amgen stock for proceeds of $21,571,700.40. Defendant Fritzky is a citizen of Washington.

29.      Defendant Franklin P. Johnson, Jr. ("Johnson") was an Amgen director from October 1980 to May 2006.  Johnson was Chairman of the Compensation Committee from 1999 to 2001 and in 2003 and was a member of the committee in 1998.  Johnson was also a member of the Audit Committee from 1994 to 1997 and from 2004 to 2006.  Because of Johnson's positions, he knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Amgen, specifically, that Aranesp and Epogen pose serious risks to cancer patients, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant

- 11 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  Period, Johnson participated in the issuance of improper statements, including the preparation of the
2  improper press releases and SEC filings and approval of other statements made to the press,
3  securities analysts and Amgen shareholders.  During the Relevant Period, Johnson sold 173,687
4  shares of Amgen stock for proceeds of $11,972,839.83.  Defendant Johnson is a citizen of
5  California.

6       30.     The defendants identified in ¶¶13, 18-26, 28-29 are referred to herein as the "Director
7  Defendants."  The defendants identified in ¶¶13-17, 27 are referred to herein as the "Officer
8  Defendants."  The defendants identified in ¶¶13-21, 27-29 are referred to herein as the "Insider
9  Selling Defendants."  Collectively, the Director Defendants, the Officer Defendants and the Insider
10  Selling Defendants are referred to herein as the "Individual Defendants."

11  **DUTIES OF THE INDIVIDUAL DEFENDANTS**

12       31.     By reason of their positions as officers, directors and/or fiduciaries of Amgen and
13  because of their ability to control the business and corporate affairs of Amgen, the Individual
14  Defendants owed Amgen and its shareholders fiduciary obligations of trust, loyalty, good faith and
15  due care, and were and are required to use their utmost ability to control and manage Amgen in a
16  fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in
17  furtherance of the best interests of Amgen and its shareholders so as to benefit all shareholders
18  equally and not in furtherance of their personal interest or benefit.

19       32.     Each director and officer of the Company owes to Amgen and its shareholders the
20  fiduciary duty to exercise good faith and diligence in the administration of the affairs of the
21  Company and in the use and preservation of its property and assets, and the highest obligations of
22  fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual
23  Defendants had a duty to promptly disseminate accurate and truthful information with regard to the
24  Company's pharmaceutical products and the Company's revenue stream derived from those products
25  including, margins, operations, performance, projections and forecasts so that the market price of the
26  Company's stock would be based on truthful and accurate information.  Furthermore, the Individual
27  Defendants had a duty to ensure that the Company was properly marketing Aranesp and Epogen for
28  uses consistent with their FDA approved indications.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

33.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Amgen, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with Amgen, each of the Individual Defendants had access to adverse non public information about the Company's pharmaceutical products.

34.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Amgen, and was at all times acting within the course and scope of such agency.

35.     To discharge their duties, the officers and directors of Amgen were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the affairs of the Company.  By virtue of such duties, the officers and directors of Amgen were required to, among other things:

(a)     Refrain from acting upon material inside corporate information to benefit themselves;

(b)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)     Conduct the affairs of the Company in an efficient, business like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's pharmaceutical products, including drug sale prospects, and ensuring that the Company maintained an adequate system of controls such that the Company's public statements regarding the Company's pharmaceutical products would be true and accurate at all times;

(e)     Remain informed as to how Amgen conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable

- 13 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    inquiry in connection therewith, and to take steps to correct such conditions or practices and make

2    such disclosures as necessary to comply with federal and state securities laws; and

3           (f)      Ensure that the Company was operated in a diligent, honest and prudent

4    manner in compliance with all applicable federal, state and local laws, rules and regulations.

5       36.      Each Individual Defendant, by virtue of his or her position as a director and/or

6    officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and

7    the exercise of due care and diligence in the management and administration of the affairs of the

8    Company, as well as in the use and preservation of its property and assets. The conduct of the

9    Individual Defendants complained of herein involves a knowing and culpable violation of their

10    obligations as directors and officers of Amgen, the absence of good faith on their part, and a reckless

11    disregard for their duties to the Company and its shareholders that the Individual Defendants were

12    aware or should have been aware posed a risk of serious injury to the Company. The conduct of the

13    Individual Defendants who were also officers and/or directors of the Company during the Relevant

14    Period has been ratified by the remaining Individual Defendants who collectively comprised all of

15    Amgen's Board during the Relevant Period.

16          **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

17       37.      In committing the wrongful acts alleged herein, the Individual Defendants have

18    pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and

19    conspired with one another in furtherance of their common plan or design. In addition to the

20    wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further

21    aided and abetted and/or assisted each other in breach of their respective duties.

22       38.      During all times relevant hereto, the Individual Defendants collectively and

23    individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the

24    Company was improperly misrepresenting material non-public information concerning Aranesp and

25    Epogen, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at Amgen and the profits,

26    (ii) maintain the Individual Defendants' executive and directorial positions at Amgen and the profits,

27    power and prestige that the Individual Defendants enjoyed as a result of these positions; and

28    (iii) deceive the investing public, including shareholders of Amgen, regarding the Individual

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  Defendants' management of Amgen's operations, the Company's financial health and stability, and
2  future business prospects, specifically related to the public statements regarding the Company's
3  pharmaceutical products that had been misrepresented by defendants throughout the Relevant
4  Period.  In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants
5  collectively and individually took the actions set forth herein.

6      39.    The Individual Defendants engaged in a conspiracy, common enterprise and/or
7  common course of conduct commencing by at least May 2005, and continuing thereafter.  During
8  this time the Individual Defendants caused the Company to conceal the true fact showing that
9  Aranesp and Epogen carry dangerous risks to cancer patients and is therefore inappropriate for use in
10  the treatment of cancer induced anemia.  In addition, defendants also made specific, false public
11  statements regarding the Company's pharmaceutical products and future business prospects, as
12  alleged herein.

13      40.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise,
14  and/or common course of conduct was, among other things, to disguise the Individual Defendants'
15  violations of law, including breaches of fiduciary duty; to conceal adverse information concerning
16  the Company's operations, the Company's pharmaceutical products, and future business prospects;
17  and to artificially inflate the price of Amgen common stock so they could: (i) dispose of over $221
18  million of their personally held stock; and (ii) protect and enhance their executive and directorial
19  positions and the substantial compensation and prestige they obtained as a result thereof.

20      41.    The Individual Defendants accomplished their conspiracy, common enterprise and/or
21  common course of conduct by causing the Company to purposefully, recklessly or negligently
22  misrepresent the safety and efficacy of its pharmaceutical products.  Because the actions described
23  herein occurred under the authority of the Board, each of the Individual Defendants was a direct,
24  necessary and substantial participant in the conspiracy, common enterprise and/or common course of
25  conduct complained of herein.

26      42.    Each of the Individual Defendants aided and abetted and rendered substantial
27  assistance in the wrongs complained of herein.  In taking such actions to substantially assist the
28  commission of the wrongdoing complained of herein, each Individual Defendant acted with

- 15 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

2    wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

3    ## IMPROPER STATEMENTS

4        43.     The Individual Defendants by their fiduciary duties of care, good faith and loyalty

5    owed to Amgen a duty to insure that the Company's Relevant Period Statements fairly presented, in

6    all material respects, the Company's operations and financial condition, including the prospects of its

7    pharmaceutical products.  In order to adequately carry out these duties, it is necessary for the

8    Individual Defendants to know and understand the material, non-public information to be either

9    disclosed or omitted from the Company's public statements.

10       44.     Defendants Sharer, Morrow, Fenton, McNamee, Perlmutter and Nanula, as officers of

11   Amgen, had ample opportunity to discuss the Company's pharmaceutical products with their fellow

12   officers at management meetings and via internal corporate documents and reports.  Defendants

13   Sharer, Baltimore, Omenn, Pelham, Gluck, Choate, Reason, Biondi, Schaeffer and Herringer,

14   Fritzky and Johnson, as directors of Amgen had ample opportunity to discuss the Company's

15   pharmaceutical products with management and fellow directors at any of the Board meetings that

16   occurred during the Relevant Period as well as at meetings of committees of the Board.  Despite

17   these duties, the Individual Defendants negligently, recklessly, and/or intentionally caused or

18   allowed, by their actions or inactions, the following improper statements to be disseminated by

19   Amgen to the investing public and the Company's shareholders during the Relevant Period.

20       45.     On May 4, 2005, the Individual Defendants caused or allowed Amgen to file a Form

21   10-Q with the SEC.  The filing affirmed that Amgen's manufacturing and marketing practices

22   encouraged the use of the Company's products for approved indications.  "We ... manufacture and

23   contract manufacture, price, sell, distribute, and market or co-market our products for their approved

24   indications."

25       46.     On July 6, 2005, the Individual Defendants caused or allowed Amgen to issue a press

26   release that touted Phase 2 study results for Aranesp that suggested that the drug was effective for

27   the treatment of anemia brought on by cancer.  The press release provided as follows:

28

Amgen ... today announced new interim data from a Phase 2 study evaluating the use of 500 mcg of Aranesp(R) (darbepoetin alfa) every three weeks to treat anemia in patients with a bone marrow disorder known as myelodysplastic syndromes (MDS).

"The majority of MDS patients develop clinically significant anemia during the course of their disease, which often leads to fatigue and increased red blood cell transfusions," said Janice Gabrilove, M.D., professor of medicine, hematology and medical oncology at Mount Sinai School of Medicine, New York and the study's lead investigator. "In this study, low risk MDS patients receiving Aranesp every three weeks, who had no prior erythropoietic therapy, exhibited an overall response of 77 percent, increased hemoglobin levels and improvements in patient reported fatigue."

47.     On December 11, 2005, the Individual Defendants caused or allowed Amgen to issue another press release touting the effectiveness of Aranesp.  The press release stated as follows:

Amgen ... today announced updated interim data from a Phase 2 study evaluating the use of 500 mcg of Aranesp® (darbepoetin alfa) administered every three weeks to treat anemia in patients with a bone marrow disorder known as myelodysplastic syndrome (MDS). Low-risk MDS patients receiving Aranesp every three weeks, who had no prior erythropoietic therapy, exhibited an overall response of 70 percent, increased hemoglobin levels and improvements in patient-reported fatigue.

"During the course of their disease, the majority of MDS patients develop clinically significant anemia, which can lead to fatigue and the need for red blood cell transfusions," said Janice Gabrilove, MD, professor of medicine, hematology and medical oncology at Mount Sinai School of Medicine, New York and the study's lead investigator. "Currently, there are no recombinant erythropoietic products approved for the treatment of anemia in MDS patients. These results are encouraging."

48.     On March 13, 2006, the Individual Defendants caused or allowed Amgen to issue a press release claiming that the treatment of anemia with Amgen can lead to benefits for heart failure patients.  The press release provided as follows:

Amgen ... announced results from a Phase 2 study that showed that treating anemia with Aranesp® (darbepoetin alfa) in patients with symptomatic heart failure was well-tolerated, effectively raised hemoglobin and improved patients' symptoms as measured by the Kansas City Cardiomyopathy Questionnaire (KCCQ).

"There is increasing evidence of a link between anemia and heart failure, and of the potential that treating anemia in heart failure patients may be beneficial over time," said Dirk J. van Veldhuisen, M.D., Ph.D., FESC, FACC, Department of Cardiology/Thoracic Surgery, University Medical Center, Groningen, Netherlands. "These data are encouraging and support the need for a large-scale, definitive trial to determine the effect of treating anemia in heart failure patients."

49.     On June 3, 2006, the Individual Defendants caused or allowed Amgen to issue a press release indicating that Aranesp was effective for treating patients with Myelodysplastic Syndromes. The press release stated as follows:

- 17 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Amgen ... today announced that after 27/28 weeks of treatment with Aranesp®
(darbepoetin alfa) administered every three weeks, patients with low-risk
myelodysplastic syndromes who had not previously received an erythropoiesis-
stimulating agent (ESA) showed a major response of 59 percent, increased
hemoglobin levels and improvements in patient-reported fatigue.

Myelodysplastic Syndromes (MDS), also known as pre-leukemia or
"smoldering" leukemia, encompass a group of disorders in which the bone marrow
does not produce enough blood cells. MDS are associated with abnormal blood
counts or poorly functioning blood cells and often result in anemia (low red blood
cell count), neutropenia (low white blood cell count) and thrombocytopenia (low
blood platelet count). Approximately 21,000 new cases of MDS are diagnosed each
year in the United States. MDS are more prevalent in men and Caucasians and
primarily occur in people older than 60.

50.   On December 4, 2006, the Individual Defendants issued a press release that
emphasized that Amgen only promotes Aranesp and Epogen for use consistent with the drugs' FDA
approved indications.  The press release stated as follows:

Amgen today posted to its corporate web site documents intended to clarify Amgen's
position on the use of EPOGEN® (Epoetin alfa) and Aranesp® (darbepoetin alfa)
and to correct what the company believes are misleading and inaccurate news reports
regarding the use of its drugs. Amgen's mission is to serve patients and the company
is committed to ensuring the highest standards of patient safety.

\* \* \*

– EPOGEN and Aranesp are effective and safe medicines when administered
according to the Food and Drug Administration (FDA) label.

– Amgen only promotes the use of EPOGEN and Aranesp consistent with the
FDA label.

– Hemoglobin maintenance is difficult and physicians are not necessarily
acting inappropriately when patients' hemoglobin levels temporarily exceed the FDA
label target range.

– CMS reimbursement guidelines are consistent with the FDA labeling policy
and allow doctors to provide patients with the best possible care.

– Changes to current guidelines should be approached judiciously and based
on the rigorous review of data and patient care.

51.   On December 9, 2006, the Individual Defendants caused or allowed Amgen to issue
another press release touting Aranesp's effectiveness for treating anemia.  The press release provided
as follows:

Amgen today announced data from two studies showing that extended dosing of
Aranesp® (darbepoetin alfa) is effective in increasing hemoglobin levels to the target
level of 11 to 12 g/dL and reducing the need for red blood cell transfusions in
patients with chemotherapy-induced anemia.

- 18 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

"Clinical evidence has demonstrated that extended dosing of Aranesp effectively treats chemotherapy-induced anemia, offering patients a way to synchronize anemia treatment with their chemotherapy and reduce the frequency of injections," said study investigator Johan Vansteenkiste, M.D., Ph.D., Respiratory Oncology Unit, University Hospital Gasthuisberg, Leuven, Belgium. "Our study suggests that the use of Aranesp administered every three weeks in combination with IV iron may improve anemia management, including reaching hemoglobin targets and reducing transfusion requirements, among chemotherapy-induced anemia patients."

52.    On December 9, 2006, the Individual Defendants caused or allowed the Company to issue a press release touting the results of another Phase 2 study that indicated that Aranesp was effective for the treatment of cancer induced anemia.  The press release stated as follows:

Amgen today announced final results of a 17-week randomized, double-blind, placebo-controlled, Phase 2 study evaluating Aranesp® (darbepoetin alfa) administered every four weeks for the treatment of anemia in cancer patients not undergoing chemotherapy and/or myelosuppressive radiotherapy, a condition known as anemia of cancer. Patients receiving Aranesp were nearly three times more likely to achieve a hematopoietic response than patients receiving a placebo (69 percent vs. 24 percent, respectively).

Although anemia is increasingly recognized as the most common side effect of chemotherapy, a growing body of evidence demonstrates that as many as 475,000 cancer patients also can become vulnerable to anemia due to the cancer itself. To combat anemia symptoms, anemia of cancer patients often receive a blood transfusion, which can be a tiring and invasive procedure. Despite its prevalence, anemia of cancer in patients is under-recognized and often not treated.

"Patients with cancer who are not receiving chemotherapy or myelosuppressive radiotherapy may have infrequent clinic visits," said David H. Gordon, M.D., clinical professor, University of Texas Health Science, and the study's lead investigator. "This study evaluated the effectiveness of extended dosing and the results suggest that this may be a potential treatment option for such patients."

## THE COMPANY PARTIALLY ADMITS THAT ARANESP POSES SIGNIFICANT RISKS FOR CANCER PATIENTS

53.    On January 25, 2007, the Individual Defendants issued a press release admitting that there is a statistically significant increased risk of death for cancer patients treated with Aranesp. The press release, stated as follows:

Aranesp: During the quarter, the Company completed an initial analysis of its Anemia of Cancer Phase 3 study. This study was a randomized, double-blind, placebo-controlled trial of Aranesp administered every four weeks in patients with active cancer not receiving chemo- or radiation therapy. All patients entering the study had anemia (Hb less than or equal to 11 g/dL) in the setting of active cancer (i.e., they were not in remission). These criteria identify a subset of patients with an especially grave prognosis. At the end of 16 weeks, there was no statistically significant difference in the frequency of transfusions in the population receiving placebo injections as opposed to those receiving Aranesp. There was a statistically

- 19 -

significant increased risk of death in the Aranesp-treated group, however, the overall safety profile did not identify any other unexpected safety concerns. Since this study was not designed as a survival study, an effect of imbalances in potentially important prognostic factors that were present at baseline cannot be excluded. Nevertheless, in this population of patients with active cancer, not in remission and not receiving chemotherapy, who have unexplained anemia, the Company concluded that the risk/benefit ratio for Aranesp use is at best neutral and perhaps negative. Two other large, placebo-controlled studies, TREAT (Trial to Reduce cardiovascular Events with Aranesp Therapy), which examines outcomes in anemic patients with renal insufficiency, and RED-HF (Reduction of Events with Darbepoetin alfa in Heart Failure) Trial™, which examines the utility of Aranesp for the treatment of heart failure, are continuing as planned.

## AN INDEPENDENT STUDY CONFIRMS THE RISKS POSED BY ARANESP TREATMENT

54.     On February 16, 2007, *The Cancer Letter* published confirming that Aranesp is an inferior treatment for cancer induced anemia.  The article provided as follows:

A study eagerly awaited by physicians, investors, regulators, and payers around the world showed a significantly inferior therapeutic outcome from adding Aranesp to radiation treatment of patients with head and neck cancer.

The study conducted by the Danish Head and Neck Cancer Group was highlighted three years ago by Aranesp's sponsor, Amgen Inc., as one of a series of rigorous trials designed to assess the impact of erythropoietin on "hard endpoints,' including survival and disease progression.

The EPO agents were approved based on their ability to decrease the need for blood transfusions, and the question of their impact on disease remains unsettled.

Despite the buildup, even informed observers have been largely unaware that the Danish study was temporarily stopped on Oct. 18, 2006, and that the decision not to resume the study was made on Dec. 1, 2006, and posted on the Web by the principal investigator, Jens Overgaard.

Experts say that the hypothesis underlying the study—that avoidance of anemia would result in a better radiation effect—now appears to be disproved. More importantly, locoregional failure on the Aranesp arm had increased significantly.  A detailed analysis of causes of death remains to be conducted.  However, it appeared that non-cancer-related deaths, including those linked to thromboembolic events, were not increased.

* * *

Though Overgaard's report stated that the company would be informed about the disappointing results, *the trial was not mentioned in Amgen's public disclosures or in a Jan. 25 conference call discussing Amgen's annual financial results,* nearly two months after it was posted by Danish investigators.

"You know roughly as much about this as we," said Roy Baynes, Amgen vice president for oncology supportive care.  "What's on this Web page is all we know at this point.  This is a high hemoglobin study conducted by an independent cooperative group in Denmark.  This is not our study."

- 20 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Baynes said he couldn't remember when Amgen was first informed about the results. However, the company "communicated with the regulatory authorities within 24 hours of getting the information," he said.

Observers in oncology and on Wall Street said this decision not to announce the result is *puzzling,* particularly because in a May 2004 presentation before the FDA Oncologic Drugs Advisory Committee, Amgen highlighted the Danish trial as one of the five studies that would answer the efficacy question for Aranesp.

Commenting on Amgen's earnings call, Wall Street analysts noted that they were awaiting the results of the efficacy trials, specifically mentioning the Danish study. "If the outcome of these trials is negative…doctors could be more cautious about using EPO-stimulating drugs in cancer patients," a Merrill Lynch analyst explained in an update. Similarly, a Jan. 30 slide presentation by Bear Stearns listed the five efficacy trials as ongoing, presumably without realizing that one of those trials had been stopped three and a half months earlier.

Several Wall Street sources who monitor Amgen confirmed that they have been awaiting these results and *were not aware of them until hearing about the closing of the trial from this reporter.*

55.     On February 23, 2007, the *Associated Press* reported that Aranesp had been delisted is the USP DI drug reference guide for the treatment of anemia in cancer patients who are not undergoing chemotherapy.  The article provided as follows:

Amgen Inc.'s Aranesp anemia drug has been removed from an influential drug-reference list for a certain use, which could jeopardize a portion of the blockbuster drug's sales.

The USP DI, a drug-reference guide published by Thomson Corp., delisted Aranesp as a treatment for anemia in cancer patients who aren't undergoing chemotherapy, Amgen spokesman David Polk said Thursday. Public and private insurers use USP DI and other guides to help determine whether to cover various drug uses. The delisting of Aranesp as a treatment for anemia of cancer could prompt insurers to drop or reduce coverage for that use.

56.     On March 6, 2007, the *Associated Press* reported more devastating news.:

In the latest blow to Amgen Inc., at least one company that administers Medicare plans has decided to stop paying for the use of the drug Aranesp to treat a certain type of anemia, citing safety concerns.

57.     On March 9, 2007, the FDA issued a press release indicating that revised product labeling would be required for Aranesp and Epogen.  The press release stated as follows:

The U.S. Food and Drug Administration (FDA) today issued a public health advisory outlining new safety information, including revised product labeling about erythropoiesis-stimulating agents (ESAs), widely-used drugs for the treatment of anemia.  The drugs affected by the safety update are darbepoetin alfa (Aranesp) and epoetin alfa (Epogen and Procrit).  ESAs are genetically engineered forms of the naturally occurring human protein, erythropoietin.  Natural erythropoietin is made by the kidney and increases the number of red blood cells).

- 21 -

## REASONS THE STATEMENTS WERE IMPROPER

58. The Individual Defendants caused or allowed Amgen to disseminate improper statements during the Relevant Period that failed to disclose and misrepresented the following material adverse facts, which the Individual Defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known:

        (a) Amgen was improperly marketing Aranesp and Epogen for off-label uses;

        (b) Studies showed that more localized cancer recurrences and slightly more deaths occurred in patients treated with Aranesp than in those taking a placebo; and

        (c) Defendants' marketing strategy would eventually lead to great damage to the Company.

## DAMAGES TO THE COMPANY

59. As a result of the Individual Defendants' improprieties, Amgen disseminated false and misleading statements concerning the safety and efficacy of Aranesp and Epogen, and misrepresented its business prospects as alleged above. In addition, as a result of defendants' Relevant Period improprieties, the Company is now the subject of several class action lawsuits that allege violations of the federal securities laws. The Company is also potentially liable for personal injury and consumer class actions filed by patients injured by Aranesp and Epogen.

60. In response to the disastrous news concerning Amgen's Aranesp and Epogen drugs, the Company's shares declined by over $20 per share between January 25, 2007 and March 29, 2007—a $20 billion loss in market capitalization. The Insider Selling Defendants fared much better, however. They sold over $221 million of their personally held shares while in possession of adverse non-public information concerning Aranesp and Epogen.

61. Moreover, while Amgen's shares were artificially inflated, the Individual Defendants directed the Company to waste assets through the buyback of over $7.7 billion of its own shares.

62. Further, as a direct and proximate result of Individual Defendants' actions, Amgen has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

1        (a)    Costs incurred to carry out internal investigations, including legal fees paid to

2  outside counsel;

3        (b)    Costs incurred investigating, defending and paying settlements in connection

4  with potential product liability and personal injury lawsuits;

5        (c)    Costs incurred in investigating and defending Amgen and certain officers in

6  the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment;

7        (d)    Costs incurred from compensation and benefits paid to the defendants who

8  have breached their fiduciary duties to Amgen; and

9        (e)    Costs incurred from the loss of doctor and patient confidence in the safety and

10  efficacy of Amgen's products.

11     63.    Moreover, these actions have irreparably damaged Amgen's corporate image and

12  goodwill.  For at least the foreseeable future, Amgen will suffer from what is known as the "liar's

13  discount," a term applied to the stocks of companies who have been implicated in illegal behavior

14  and have misled the investing public, such that Amgen's ability to raise equity capital or debt on

15  favorable terms in the future is now impaired.

16                    **ILLEGAL INSIDER SELLING**

17     64.    While in possession of the undisclosed material adverse information, the Insider

18  Selling Defendants sold the following shares of Amgen stock:

| Defendant Name | Transaction Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| BALTIMORE | 11/18/2005 | 30,000 | $82.97 | $2,489,100.00 |
| | | **30,000** | | **$2,489,100.00** |
| | | | | |
| FENTON | 2/4/2005 | 27,896 | $62.57 | $1,745,452.72 |
| | 5/23/2005 | 30,000 | $61.57 | $1,847,100.00 |
| | 7/25/2005 | 46,848 | $81.03 | $3,796,093.44 |
| | 11/7/2005 | 25,000 | $80.00 | $2,000,000.00 |
| | 12/6/2005 | 3,049 | $79.78 | $243,249.22 |
| | 2/24/2006 | 28,800 | $74.48 | $2,145,024.00 |
| | 6/1/2006 | 30,000 | $68.18 | $2,045,400.00 |
| | 10/26/2006 | 900 | $74.73 | $67,257.00 |
| | 10/26/2006 | 600 | $74.74 | $44,844.00 |
| | 10/26/2006 | 3,202 | $74.75 | $239,349.50 |
| | 10/26/2006 | 10,802 | $74.76 | $807,557.52 |
| | 10/26/2006 | 9,598 | $74.77 | $717,642.46 |
| | 10/26/2006 | 5,008 | $74.78 | $374,498.24 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | 10/26/2006 | 700 | $74.79 | $52,353.00 |
|---|---|---|---|---|---|
| | | 10/26/2006 | 978 | $74.80 | $73,154.40 |
| | | 10/26/2006 | 241 | $74.81 | $18,029.21 |
| | | 10/26/2006 | 2,925 | $74.82 | $218,848.50 |
| | | 10/26/2006 | 197 | $74.83 | $14,741.51 |
| | | 10/26/2006 | 949 | $74.84 | $71,023.16 |
| | | 10/26/2006 | 800 | $74.85 | $59,880.00 |
| | | 10/26/2006 | 2,000 | $74.87 | $149,740.00 |
| | | 10/26/2006 | 1,100 | $74.88 | $82,368.00 |
| | | 11/7/2006 | 2,304 | $75.23 | $173,329.92 |
| | | 11/7/2006 | 4,971 | $75.24 | $374,018.04 |
| | | 11/7/2006 | 7,925 | $75.25 | $596,356.25 |
| | | 11/7/2006 | 1,799 | $75.26 | $135,392.74 |
| | | 11/7/2006 | 2,601 | $75.27 | $195,777.27 |
| | | 11/7/2006 | 2,200 | $75.28 | $165,616.00 |
| | | 11/7/2006 | 548 | $75.29 | $41,258.92 |
| | | 11/7/2006 | 48 | $75.30 | $3,614.40 |
| | | 11/7/2006 | 5,420 | $75.31 | $408,180.20 |
| | | 11/7/2006 | 845 | $75.32 | $63,645.40 |
| | | 11/7/2006 | 572 | $75.33 | $43,088.76 |
| | | 11/7/2006 | 700 | $75.38 | $52,766.00 |
| | | 11/7/2006 | 600 | $75.39 | $45,234.00 |
| | | 11/7/2006 | 1,200 | $75.40 | $90,480.00 |
| | | 11/7/2006 | 980 | $75.41 | $73,901.80 |
| | | 11/7/2006 | 320 | $75.43 | $24,137.60 |
| | | 11/7/2006 | 3,667 | $75.45 | $276,675.15 |
| | | 11/7/2006 | 1,807 | $75.46 | $136,356.22 |
| | | 11/7/2006 | 1,493 | $75.47 | $112,676.71 |
| | | 12/6/2006 | 3,049 | $69.89 | $213,094.61 |
| | | 12/8/2006 | 20,000 | $70.15 | $1,403,000.00 |
| | | | **294,642** | | **$21,442,205.87** |
| | | | | | |
| | FRITZKY | 2/1/2005 | 29,340 | $62.56 | $1,835,510.40 |
| | | 2/1/2005 | 25,000 | $62.65 | $1,566,250.00 |
| | | 2/1/2005 | 25,000 | $62.79 | $1,569,750.00 |
| | | 2/1/2005 | 25,000 | $62.42 | $1,560,500.00 |
| | | 2/1/2005 | 25,000 | $62.42 | $1,560,500.00 |
| | | 2/1/2005 | 25,000 | $62.30 | $1,557,500.00 |
| | | 2/1/2005 | 15,000 | $62.34 | $935,100.00 |
| | | 2/1/2005 | 10,000 | $62.29 | $622,900.00 |
| | | 2/1/2005 | 25,000 | $62.52 | $1,563,000.00 |
| | | 4/26/2005 | 10,000 | $57.40 | $574,000.00 |
| | | 4/26/2005 | 5,000 | $57.50 | $287,500.00 |
| | | 4/26/2005 | 5,000 | $57.57 | $287,850.00 |
| | | 4/26/2005 | 7,000 | $57.70 | $403,900.00 |
| | | 4/26/2005 | 20,000 | $58.00 | $1,160,000.00 |
| | | 4/26/2005 | 20,000 | $58.03 | $1,160,600.00 |
| | | 4/26/2005 | 20,000 | $58.04 | $1,160,800.00 |
| | | 4/26/2005 | 14,800 | $58.05 | $859,140.00 |
| | | 4/26/2005 | 20,000 | $58.07 | $1,161,400.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 4/26/2005 | 20,000 | $58.17 | $1,163,400.00 |
| | 4/26/2005 | 10,000 | $58.21 | $582,100.00 |
| | | 356,140 | | $21,571,700.40 |
| | | | | |
| JOHNSON | 2/3/2005 | 7,500 | $62.00 | $465,000.00 |
| | 2/3/2005 | 62 | $62.05 | $3,850.20 |
| | 2/3/2005 | 62 | $62.42 | $3,896.26 |
| | 2/3/2005 | 62 | $62.43 | $3,897.50 |
| | 5/9/2005 | 41,000 | $58.77 | $2,409,570.00 |
| | 5/9/2005 | 35,000 | $58.85 | $2,059,750.00 |
| | 11/8/2005 | 5,000 | $80.05 | $400,250.00 |
| | 11/8/2005 | 100 | $80.12 | $8,012.00 |
| | 11/8/2005 | 802 | $80.13 | $64,264.26 |
| | 11/8/2005 | 200 | $80.14 | $16,028.00 |
| | 11/8/2005 | 5,000 | $80.25 | $401,250.00 |
| | 11/8/2005 | 2,400 | $80.31 | $192,744.00 |
| | 11/8/2005 | 200 | $80.35 | $16,070.00 |
| | 11/8/2005 | 200 | $80.38 | $16,076.00 |
| | 11/8/2005 | 11,098 | $80.40 | $892,279.20 |
| | 11/14/2005 | 513 | $81.57 | $41,845.41 |
| | 11/14/2005 | 10,500 | $81.58 | $856,590.00 |
| | 11/14/2005 | 1,000 | $81.60 | $81,600.00 |
| | 11/14/2005 | 300 | $81.61 | $24,483.00 |
| | 11/14/2005 | 10,100 | $81.64 | $824,564.00 |
| | 11/14/2005 | 2,487 | $81.65 | $203,063.55 |
| | 11/14/2005 | 100 | $81.68 | $8,168.00 |
| | 2/17/2006 | 100 | $74.05 | $7,405.00 |
| | 2/17/2006 | 100 | $74.06 | $7,406.00 |
| | 2/17/2006 | 100 | $74.07 | $7,407.00 |
| | 2/17/2006 | 200 | $74.11 | $14,822.00 |
| | 2/17/2006 | 300 | $74.16 | $22,248.00 |
| | 2/17/2006 | 100 | $74.17 | $7,417.00 |
| | 2/17/2006 | 100 | $74.18 | $7,418.00 |
| | 2/17/2006 | 100 | $74.19 | $7,419.00 |
| | 2/17/2006 | 800 | $74.20 | $59,360.00 |
| | 2/17/2006 | 200 | $74.21 | $14,842.00 |
| | 2/17/2006 | 300 | $74.22 | $22,266.00 |
| | 2/17/2006 | 300 | $74.24 | $22,272.00 |
| | 2/17/2006 | 200 | $74.25 | $14,850.00 |
| | 2/17/2006 | 800 | $74.26 | $59,408.00 |
| | 2/17/2006 | 100 | $74.27 | $7,427.00 |
| | 2/17/2006 | 700 | $74.29 | $52,003.00 |
| | 2/17/2006 | 800 | $74.30 | $59,440.00 |
| | 2/17/2006 | 700 | $74.31 | $52,017.00 |
| | 2/17/2006 | 100 | $74.32 | $7,432.00 |
| | 2/17/2006 | 200 | $74.33 | $14,866.00 |
| | 2/17/2006 | 700 | $74.36 | $52,052.00 |
| | 2/17/2006 | 400 | $74.37 | $29,748.00 |
| | 2/17/2006 | 900 | $74.38 | $66,942.00 |
| | 2/17/2006 | 400 | $74.39 | $29,756.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | | 2/17/2006 | 1,500 | $74.40 | $111,600.00 |
| | | 2/17/2006 | 1,600 | $74.41 | $119,056.00 |
| | | 2/17/2006 | 400 | $74.42 | $29,768.00 |
| | | 2/17/2006 | 400 | $74.43 | $29,772.00 |
| | | 2/17/2006 | 600 | $74.44 | $44,664.00 |
| | | 2/17/2006 | 600 | $74.45 | $44,670.00 |
| | | 2/17/2006 | 3,500 | $74.46 | $260,610.00 |
| | | 2/17/2006 | 1,500 | $74.47 | $111,705.00 |
| | | 2/17/2006 | 1,400 | $74.48 | $104,272.00 |
| | | 2/17/2006 | 1,000 | $74.49 | $74,490.00 |
| | | 2/17/2006 | 2,358 | $74.50 | $175,671.00 |
| | | 2/17/2006 | 1,042 | $74.51 | $77,639.42 |
| | | 2/17/2006 | 600 | $74.52 | $44,712.00 |
| | | 2/17/2006 | 1,000 | $74.53 | $74,530.00 |
| | | 2/17/2006 | 400 | $74.54 | $29,816.00 |
| | | 2/17/2006 | 200 | $74.55 | $14,910.00 |
| | | 2/17/2006 | 1,300 | $74.56 | $96,928.00 |
| | | 2/17/2006 | 100 | $74.57 | $7,457.00 |
| | | 2/17/2006 | 500 | $74.58 | $37,290.00 |
| | | 2/17/2006 | 100 | $74.59 | $7,459.00 |
| | | 2/17/2006 | 700 | $74.60 | $52,220.00 |
| | | 2/17/2006 | 800 | $74.61 | $59,688.00 |
| | | 2/17/2006 | 465 | $74.62 | $34,698.30 |
| | | 2/17/2006 | 500 | $74.63 | $37,315.00 |
| | | 2/17/2006 | 200 | $74.64 | $14,928.00 |
| | | 2/17/2006 | 500 | $74.65 | $37,325.00 |
| | | 2/17/2006 | 750 | $74.66 | $55,995.00 |
| | | 2/17/2006 | 600 | $74.67 | $44,802.00 |
| | | 2/17/2006 | 454 | $74.68 | $33,904.72 |
| | | 2/17/2006 | 1,900 | $74.69 | $141,911.00 |
| | | 2/17/2006 | 1,000 | $74.70 | $74,700.00 |
| | | 2/17/2006 | 3,331 | $74.71 | $248,859.01 |
| | | | 173,687 | | $11,972,839.83 |
| | | | | | |
| MCNAMEE | | 8/16/2005 | 7,722 | $80.10 | $618,532.20 |
| | | 8/16/2005 | 500 | $80.11 | $40,055.00 |
| | | 8/16/2005 | 1,678 | $80.14 | $134,474.92 |
| | | 8/16/2005 | 1,000 | $80.17 | $80,170.00 |
| | | 8/16/2005 | 1,054 | $80.49 | $84,836.46 |
| | | 8/16/2005 | 38,046 | $80.50 | $3,062,703.00 |
| | | 11/10/2005 | 17,762 | $81.36 | $1,445,116.32 |
| | | 11/10/2005 | 1,000 | $81.37 | $81,370.00 |
| | | 11/10/2005 | 400 | $81.38 | $32,552.00 |
| | | 11/10/2005 | 900 | $81.39 | $73,251.00 |
| | | 11/10/2005 | 1,600 | $81.40 | $130,240.00 |
| | | 11/10/2005 | 400 | $81.41 | $32,564.00 |
| | | 11/10/2005 | 100 | $81.42 | $8,142.00 |
| | | 11/10/2005 | 1,112 | $81.44 | $90,561.28 |
| | | 11/10/2005 | 1,200 | $81.45 | $97,740.00 |
| | | 11/10/2005 | 900 | $81.48 | $73,332.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 11/10/2005 | 1,752 | $81.49 | $142,770.48 |
| | 11/10/2005 | 14,100 | $81.50 | $1,149,150.00 |
| | 11/10/2005 | 7,700 | $81.51 | $627,627.00 |
| | 11/10/2005 | 2,800 | $81.52 | $228,256.00 |
| | 11/10/2005 | 1,500 | $81.53 | $122,295.00 |
| | 11/10/2005 | 300 | $81.54 | $24,462.00 |
| | 11/10/2005 | 2,983 | $81.55 | $243,263.65 |
| | 11/10/2005 | 560 | $81.56 | $45,673.60 |
| | 11/10/2005 | 5,700 | $81.58 | $465,006.00 |
| | 11/10/2005 | 1,664 | $81.59 | $135,765.76 |
| | 11/10/2005 | 20,891 | $81.60 | $1,704,705.60 |
| | 11/10/2005 | 3,700 | $81.61 | $301,957.00 |
| | 11/10/2005 | 2,700 | $81.62 | $220,374.00 |
| | 11/10/2005 | 7,338 | $81.63 | $599,000.94 |
| | 11/10/2005 | 1,000 | $81.64 | $81,640.00 |
| | 11/10/2005 | 4,618 | $81.65 | $377,059.70 |
| | 11/10/2005 | 200 | $81.66 | $16,332.00 |
| | 11/10/2005 | 900 | $81.67 | $73,503.00 |
| | 11/10/2005 | 362 | $81.68 | $29,568.16 |
| | 11/10/2005 | 2,100 | $81.69 | $171,549.00 |
| | 11/10/2005 | 981 | $81.70 | $80,147.70 |
| | 11/10/2005 | 2,245 | $81.71 | $183,438.95 |
| | 11/10/2005 | 700 | $81.72 | $57,204.00 |
| | 3/3/2006 | 2,157 | $75.39 | $162,616.23 |
| | 3/3/2007 | 2,160 | $61.62 | $133,099.20 |
| | | **166,485** | | **$13,462,105.15** |
| | | | | |
| MORROW | 7/25/2005 | 5,000 | $80.93 | $404,650.00 |
| | 7/25/2005 | 25,000 | $80.99 | $2,024,750.00 |
| | 7/25/2005 | 3,000 | $80.99 | $242,970.00 |
| | 7/25/2005 | 10,000 | $81.00 | $810,000.00 |
| | 7/25/2005 | 10,000 | $81.01 | $810,100.00 |
| | 7/25/2005 | 28,000 | $81.02 | $2,268,560.00 |
| | 7/25/2005 | 15,000 | $81.05 | $1,215,750.00 |
| | 7/25/2005 | 39,000 | $81.07 | $3,161,730.00 |
| | 7/25/2005 | 22,000 | $81.09 | $1,783,980.00 |
| | 7/25/2005 | 13,000 | $81.10 | $1,054,300.00 |
| | 7/25/2005 | 10,000 | $81.15 | $811,500.00 |
| | 7/25/2005 | 73,335 | $81.20 | $5,954,802.00 |
| | 7/25/2005 | 10,000 | $81.21 | $812,100.00 |
| | 7/25/2005 | 10,000 | $81.21 | $812,100.00 |
| | 7/25/2005 | 5,000 | $81.22 | $406,100.00 |
| | 7/25/2005 | 15,000 | $81.24 | $1,218,600.00 |
| | 7/25/2005 | 10,000 | $81.25 | $812,500.00 |
| | | **303,335** | | **$24,604,492.00** |
| | | | | |
| NANULA | 5/17/2005 | 7,578 | $62.60 | $474,382.80 |
| | 5/17/2005 | 7,357 | $62.60 | $460,548.20 |
| | 5/17/2005 | 6,424 | $62.62 | $402,270.88 |
| | 5/17/2005 | 4,176 | $62.66 | $261,668.16 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | | |
|---|---|---|---|---|---|
| | | 5/17/2005 | 1,402 | $62.69 | $87,891.38 |
| | | 5/17/2005 | 7,423 | $62.70 | $465,422.10 |
| | | 5/17/2005 | 4,900 | $62.70 | $307,230.00 |
| | | 5/17/2005 | 1,591 | $62.70 | $99,755.70 |
| | | 8/3/2005 | 8,895 | $82.50 | $733,837.50 |
| | | 8/3/2005 | 6,105 | $82.50 | $503,662.50 |
| | | 8/3/2005 | 10,000 | $82.51 | $825,100.00 |
| | | 8/3/2005 | 2,700 | $82.53 | $222,831.00 |
| | | 8/3/2005 | 32 | $82.53 | $2,640.96 |
| | | 8/3/2005 | 5,000 | $82.54 | $412,700.00 |
| | | 8/3/2005 | 10,000 | $82.65 | $826,500.00 |
| | | 8/3/2005 | 6,668 | $82.67 | $551,243.56 |
| | | 8/3/2005 | 100 | $82.67 | $8,267.00 |
| | | 8/3/2005 | 5,500 | $82.69 | $454,795.00 |
| | | 8/3/2005 | 5,000 | $82.69 | $413,450.00 |
| | | 8/3/2005 | 5,000 | $82.70 | $413,500.00 |
| | | 5/16/2006 | 9,149 | $62.99 | $576,295.51 |
| | | 5/17/2006 | 100 | $68.97 | $6,897.00 |
| | | 5/17/2006 | 101 | $69.00 | $6,969.00 |
| | | 5/17/2006 | 100 | $69.01 | $6,901.00 |
| | | 5/17/2006 | 200 | $69.03 | $13,806.00 |
| | | 5/17/2006 | 1,600 | $69.04 | $110,464.00 |
| | | 5/17/2006 | 2,574 | $69.05 | $177,734.70 |
| | | 5/17/2006 | 4,738 | $69.13 | $327,537.94 |
| | | 5/17/2006 | 32 | $69.14 | $2,212.48 |
| | | 5/17/2006 | 255 | $69.15 | $17,633.25 |
| | | 5/17/2006 | 600 | $69.17 | $41,502.00 |
| | | 5/17/2006 | 1,700 | $69.19 | $117,623.00 |
| | | 5/17/2006 | 2,800 | $69.20 | $193,760.00 |
| | | 5/17/2006 | 300 | $69.20 | $20,760.00 |
| | | 5/17/2006 | 400 | $69.21 | $27,684.00 |
| | | 5/17/2006 | 200 | $69.23 | $13,846.00 |
| | | 5/17/2006 | 200 | $69.25 | $13,850.00 |
| | | 5/17/2006 | 700 | $69.26 | $48,482.00 |
| | | 5/17/2006 | 200 | $69.27 | $13,854.00 |
| | | 5/17/2006 | 100 | $69.28 | $6,928.00 |
| | | 5/17/2006 | 2,900 | $69.29 | $200,941.00 |
| | | 5/17/2006 | 300 | $69.29 | $20,787.00 |
| | | 5/17/2006 | 3,837 | $69.33 | $266,019.21 |
| | | 5/17/2006 | 100 | $69.35 | $6,935.00 |
| | | 5/17/2006 | 75 | $69.39 | $5,204.25 |
| | | 5/17/2006 | 25 | $69.40 | $1,735.00 |
| | | 5/17/2006 | 200 | $69.43 | $13,886.00 |
| | | 5/17/2006 | 76 | $69.44 | $5,277.44 |
| | | 10/31/2006 | 30,000 | $76.00 | $2,280,000.00 |
| | | | **169,413** | | **$12,473,221.52** |
| | | | | | |
| | OMENN | 1/25/2006 | 1,885 | $74.94 | $141,261.90 |
| | | 2/22/2006 | 2,000 | $74.99 | $149,980.00 |
| | | 2/22/2006 | 400 | $75.01 | $30,004.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 2/22/2006 | 300 | $75.02 | $22,506.00 |
| | 2/22/2006 | 300 | $75.03 | $22,509.00 |
| | 2/22/2006 | 1,000 | $75.25 | $75,250.00 |
| | 2/22/2006 | 2,000 | $75.26 | $150,520.00 |
| | 3/1/2006 | 300 | $76.11 | $22,833.00 |
| | 3/1/2006 | 700 | $76.16 | $53,312.00 |
| | 3/1/2006 | 600 | $76.22 | $45,732.00 |
| | 3/1/2006 | 400 | $76.24 | $30,496.00 |
| | 3/3/2006 | 1,000 | $76.74 | $76,740.00 |
| | 3/3/2006 | 600 | $76.85 | $46,110.00 |
| | 1/25/2007 | 2,120 | $75.14 | $159,296.80 |
| | 3/7/2005 | 1,000 | $62.50 | $62,500.00 |
| | 3/7/2005 | 500 | $62.52 | $31,260.00 |
| | 3/7/2005 | 500 | $62.59 | $31,295.00 |
| | 2/11/2005 | 2,000 | $63.15 | $126,300.00 |
| | 2/11/2005 | 1,000 | $63.90 | $63,900.00 |
| | 2/11/2005 | 1,000 | $63.57 | $63,570.00 |
| | 2/11/2005 | 1,000 | $63.41 | $63,410.00 |
| | 2/11/2005 | 1,000 | $63.31 | $63,310.00 |
| | 2/11/2005 | 1,000 | $63.27 | $63,270.00 |
| | 2/11/2005 | 2,200 | $64.16 | $141,152.00 |
| | | 24,805 | | $1,736,517.70 |
| | | | | |
| PELHAM | 8/4/2005 | 16,000 | $82.77 | $1,324,320.00 |
| | | 16,000 | | $1,324,320.00 |
| | | | | |
| PERLMUTTER | 4/1/2005 | 10,979 | $57.35 | $629,645.65 |
| | 7/27/2005 | 100 | $80.86 | $8,086.00 |
| | 7/27/2005 | 200 | $80.87 | $16,174.00 |
| | 7/27/2005 | 300 | $80.88 | $24,264.00 |
| | 7/27/2005 | 200 | $80.89 | $16,178.00 |
| | 7/27/2005 | 200 | $80.90 | $16,180.00 |
| | 7/27/2005 | 1,500 | $80.91 | $121,365.00 |
| | 7/27/2005 | 3,300 | $80.92 | $267,036.00 |
| | 7/27/2005 | 1,300 | $80.93 | $105,209.00 |
| | 7/27/2005 | 1,600 | $80.95 | $129,520.00 |
| | 7/27/2005 | 1,525 | $80.96 | $123,464.00 |
| | 7/27/2005 | 2,275 | $80.97 | $184,206.75 |
| | 7/27/2005 | 2,100 | $80.98 | $170,058.00 |
| | 7/27/2005 | 2,500 | $80.99 | $202,475.00 |
| | 7/27/2005 | 3,300 | $81.00 | $267,300.00 |
| | 7/27/2005 | 1,800 | $81.01 | $145,818.00 |
| | 7/27/2005 | 1,400 | $81.02 | $113,428.00 |
| | 7/27/2005 | 1,200 | $81.03 | $97,236.00 |
| | 7/27/2005 | 1,000 | $81.04 | $81,040.00 |
| | 7/27/2005 | 100 | $81.05 | $8,105.00 |
| | 7/27/2005 | 100 | $81.06 | $8,106.00 |
| | 7/27/2005 | 300 | $81.07 | $24,321.00 |
| | 7/27/2005 | 800 | $81.08 | $64,864.00 |
| | 7/27/2005 | 500 | $81.09 | $40,545.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| 1 | 7/27/2005 | 1,100 | $81.10 | $89,210.00 |
| | 7/27/2005 | 1,000 | $81.11 | $81,110.00 |
| 2 | 7/27/2005 | 600 | $81.12 | $48,672.00 |
| | 7/27/2005 | 600 | $81.13 | $48,678.00 |
| 3 | 7/27/2005 | 800 | $81.14 | $64,912.00 |
| | 7/27/2005 | 700 | $81.15 | $56,805.00 |
| 4 | 7/27/2005 | 1,000 | $81.16 | $81,160.00 |
| | 7/27/2005 | 500 | $81.17 | $40,585.00 |
| 5 | 7/27/2005 | 500 | $81.18 | $40,590.00 |
| 6 | 7/27/2005 | 100 | $81.19 | $8,119.00 |
| | 7/27/2005 | 1,400 | $81.20 | $113,680.00 |
| 7 | 7/27/2005 | 1,075 | $81.21 | $87,300.75 |
| 8 | 7/27/2005 | 400 | $81.22 | $32,488.00 |
| | 7/27/2005 | 200 | $81.23 | $16,246.00 |
| 9 | 7/27/2005 | 925 | $81.24 | $75,147.00 |
| | 7/27/2005 | 700 | $81.25 | $56,875.00 |
| 10 | 7/27/2005 | 300 | $81.26 | $24,378.00 |
| | 7/27/2005 | 100 | $81.27 | $8,127.00 |
| 11 | 7/27/2005 | 100 | $81.34 | $8,134.00 |
| 12 | 7/27/2005 | 300 | $80.94 | $24,282.00 |
| | 11/17/2005 | 5,000 | $82.19 | $410,950.00 |
| 13 | 11/17/2005 | 1,000 | $82.19 | $82,190.00 |
| | 11/17/2005 | 1,000 | $82.19 | $82,190.00 |
| 14 | 11/17/2005 | 1,000 | $82.20 | $82,200.00 |
| | 11/17/2005 | 1,000 | $82.20 | $82,200.00 |
| 15 | 11/17/2005 | 7,000 | $82.21 | $575,470.00 |
| | 11/17/2005 | 1,000 | $82.23 | $82,230.00 |
| 16 | 11/17/2005 | 7,000 | $82.24 | $575,680.00 |
| | 11/17/2005 | 1,000 | $82.24 | $82,240.00 |
| 17 | 11/17/2005 | 3,000 | $82.25 | $246,750.00 |
| 18 | 11/17/2005 | 2,000 | $82.26 | $164,520.00 |
| | 11/17/2005 | 1,000 | $82.26 | $82,260.00 |
| 19 | 11/17/2005 | 1,000 | $82.27 | $82,270.00 |
| | 11/17/2005 | 2,000 | $82.27 | $164,540.00 |
| 20 | 11/17/2005 | 1,000 | $82.26 | $82,260.00 |
| | 11/17/2005 | 1,000 | $82.28 | $82,280.00 |
| 21 | 11/17/2005 | 2,000 | $82.30 | $164,600.00 |
| | 11/17/2005 | 1,000 | $82.30 | $82,300.00 |
| 22 | 11/17/2005 | 1,000 | $82.31 | $82,310.00 |
| | 11/17/2005 | 1,000 | $82.32 | $82,320.00 |
| 23 | 11/17/2005 | 1,000 | $82.32 | $82,320.00 |
| 24 | 11/17/2005 | 1,000 | $82.32 | $82,320.00 |
| | 11/17/2005 | 1,000 | $82.33 | $82,330.00 |
| 25 | 11/17/2005 | 2,000 | $82.34 | $164,680.00 |
| | 11/17/2005 | 1,000 | $82.34 | $82,340.00 |
| 26 | 11/17/2005 | 1,000 | $82.35 | $82,350.00 |
| | 11/17/2005 | 1,000 | $82.36 | $82,360.00 |
| 27 | 11/17/2005 | 4,000 | $82.37 | $329,480.00 |
| | 11/17/2005 | 1,000 | $82.37 | $82,370.00 |
| 28 | 11/17/2005 | 10,000 | $82.38 | $823,800.00 |

- 30 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | | 11/17/2005 | 1,000 | $82.38 | $82,380.00 |
| | | 11/17/2005 | 3,000 | $82.39 | $247,170.00 |
| | | 11/17/2005 | 1,000 | $82.39 | $82,390.00 |
| | | 11/17/2005 | 1,000 | $82.39 | $82,390.00 |
| | | 11/17/2005 | 1,000 | $82.38 | $82,380.00 |
| | | 11/17/2005 | 1,000 | $82.39 | $82,390.00 |
| | | 11/17/2005 | 1,000 | $82.39 | $82,390.00 |
| | | 11/17/2005 | 1,000 | $82.40 | $82,400.00 |
| | | 11/17/2005 | 1,000 | $82.40 | $82,400.00 |
| | | 11/17/2005 | 2,000 | $82.41 | $164,820.00 |
| | | 11/17/2005 | 1,000 | $82.41 | $82,410.00 |
| | | 11/17/2005 | 3,000 | $82.42 | $247,260.00 |
| | | 11/17/2005 | 1,000 | $82.42 | $82,420.00 |
| | | 11/17/2005 | 1,000 | $82.42 | $82,420.00 |
| | | 11/17/2005 | 10,000 | $82.43 | $824,300.00 |
| | | 11/17/2005 | 1,000 | $82.43 | $82,430.00 |
| | | 11/17/2005 | 1,000 | $82.43 | $82,430.00 |
| | | 11/17/2005 | 4,000 | $82.44 | $329,760.00 |
| | | | **149,979** | | **$12,021,773.15** |
| | | | | | |
| | SHARER | 7/28/2005 | 100 | $80.79 | $8,079.00 |
| | | 7/28/2005 | 2,000 | $80.87 | $161,740.00 |
| | | 7/28/2005 | 2,100 | $80.92 | $169,932.00 |
| | | 7/28/2005 | 1,500 | $80.93 | $121,395.00 |
| | | 7/28/2005 | 1,148 | $80.93 | $92,907.64 |
| | | 7/28/2005 | 900 | $80.93 | $72,837.00 |
| | | 7/28/2005 | 617 | $80.94 | $49,939.98 |
| | | 7/28/2005 | 1,852 | $80.95 | $149,919.40 |
| | | 7/28/2005 | 1,183 | $80.95 | $95,763.85 |
| | | 7/28/2005 | 1,800 | $80.96 | $145,728.00 |
| | | 7/28/2005 | 1,413 | $80.96 | $114,396.48 |
| | | 7/28/2005 | 1,400 | $80.96 | $113,344.00 |
| | | 7/28/2005 | 128 | $80.96 | $10,362.88 |
| | | 7/28/2005 | 1,463 | $80.97 | $118,459.11 |
| | | 7/28/2005 | 1,300 | $80.98 | $105,274.00 |
| | | 7/28/2005 | 1,200 | $80.98 | $97,176.00 |
| | | 7/28/2005 | 976 | $80.98 | $79,036.48 |
| | | 7/28/2005 | 8,705 | $80.99 | $705,017.95 |
| | | 7/28/2005 | 1,872 | $80.99 | $151,613.28 |
| | | 7/28/2005 | 1,769 | $80.99 | $143,271.31 |
| | | 7/28/2005 | 1,662 | $80.99 | $134,605.38 |
| | | 7/28/2005 | 1,500 | $80.99 | $121,485.00 |
| | | 7/28/2005 | 1,046 | $80.99 | $84,715.54 |
| | | 7/28/2005 | 1,041 | $80.99 | $84,310.59 |
| | | 7/28/2005 | 816 | $80.99 | $66,087.84 |
| | | 7/28/2005 | 12,919 | $81.00 | $1,046,439.00 |
| | | 7/28/2005 | 2,400 | $81.00 | $194,400.00 |
| | | 7/28/2005 | 2,400 | $81.00 | $194,400.00 |
| | | 7/28/2005 | 2,100 | $81.00 | $170,100.00 |
| | | 7/28/2005 | 2,100 | $81.00 | $170,100.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 7/28/2005 | 1,700 | $81.00 | $137,700.00 |
| | 7/28/2005 | 600 | $81.00 | $48,600.00 |
| | 7/28/2005 | 200 | $81.00 | $16,200.00 |
| | 7/28/2005 | 8,369 | $81.01 | $677,972.69 |
| | 7/28/2005 | 5,399 | $81.01 | $437,372.99 |
| | 7/28/2005 | 1,880 | $81.01 | $152,298.80 |
| | 7/28/2005 | 1,800 | $81.01 | $145,818.00 |
| | 7/28/2005 | 1,500 | $81.01 | $121,515.00 |
| | 7/28/2005 | 1,490 | $81.01 | $120,704.90 |
| | 7/28/2005 | 1,200 | $81.01 | $97,212.00 |
| | 7/28/2005 | 1,200 | $81.01 | $97,212.00 |
| | 7/28/2005 | 1,198 | $81.01 | $97,049.98 |
| | 7/28/2005 | 1,160 | $81.01 | $93,971.60 |
| | 7/28/2005 | 884 | $81.01 | $71,612.84 |
| | 7/28/2005 | 1,800 | $81.02 | $145,836.00 |
| | 7/28/2005 | 1,500 | $81.02 | $121,530.00 |
| | 7/28/2005 | 1,414 | $81.02 | $114,562.28 |
| | 7/28/2005 | 1,200 | $81.02 | $97,224.00 |
| | 7/28/2005 | 1,190 | $81.02 | $96,413.80 |
| | 7/28/2005 | 1,061 | $81.02 | $85,962.22 |
| | 7/28/2005 | 900 | $81.02 | $72,918.00 |
| | 7/28/2005 | 900 | $81.02 | $72,918.00 |
| | 7/28/2005 | 3,616 | $81.03 | $293,004.48 |
| | 7/28/2005 | 2,985 | $81.03 | $241,874.55 |
| | 7/28/2005 | 2,900 | $81.03 | $234,987.00 |
| | 7/28/2005 | 2,300 | $81.03 | $186,369.00 |
| | 7/28/2005 | 1,200 | $81.03 | $97,236.00 |
| | 7/28/2005 | 1,200 | $81.02 | $97,224.00 |
| | 7/28/2005 | 1,000 | $81.03 | $81,030.00 |
| | 7/28/2005 | 4,028 | $81.04 | $326,429.12 |
| | 7/28/2005 | 1,955 | $81.04 | $158,433.20 |
| | 7/28/2005 | 1,800 | $81.04 | $145,872.00 |
| | 7/28/2005 | 1,470 | $81.04 | $119,128.80 |
| | 7/28/2005 | 675 | $81.04 | $54,702.00 |
| | 7/28/2005 | 3,170 | $81.05 | $256,928.50 |
| | 7/28/2005 | 3,121 | $81.05 | $252,957.05 |
| | 7/28/2005 | 2,165 | $81.05 | $175,473.25 |
| | 7/28/2005 | 2,099 | $81.05 | $170,123.95 |
| | 7/28/2005 | 1,548 | $81.05 | $125,465.40 |
| | 7/28/2005 | 1,412 | $81.05 | $114,442.60 |
| | 7/28/2005 | 1,300 | $81.05 | $105,365.00 |
| | 7/28/2005 | 3,600 | $81.06 | $291,816.00 |
| | 7/28/2005 | 2,192 | $81.06 | $177,683.52 |
| | 7/28/2005 | 1,795 | $81.06 | $145,502.70 |
| | 7/28/2005 | 1,481 | $81.06 | $120,049.86 |
| | 7/28/2005 | 1,400 | $81.06 | $113,484.00 |
| | 7/28/2005 | 1,350 | $81.06 | $109,431.00 |
| | 7/28/2005 | 1,200 | $81.06 | $97,272.00 |
| | 7/28/2005 | 1,122 | $81.06 | $90,949.32 |
| | 7/28/2005 | 1,100 | $81.06 | $89,166.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | 7/28/2005 | 900 | $81.06 | $72,954.00 |
|---|---|---|---|---|
| | 7/28/2005 | 3,438 | $81.07 | $278,718.66 |
| | 7/28/2005 | 2,700 | $81.07 | $218,889.00 |
| | 7/28/2005 | 1,838 | $81.07 | $149,006.66 |
| | 7/28/2005 | 1,800 | $81.07 | $145,926.00 |
| | 7/28/2005 | 1,082 | $81.07 | $87,717.74 |
| | 7/28/2005 | 900 | $81.07 | $72,963.00 |
| | 7/28/2005 | 1,900 | $81.08 | $154,052.00 |
| | 7/28/2005 | 1,740 | $81.08 | $141,079.20 |
| | 7/28/2005 | 1,500 | $81.08 | $121,620.00 |
| | 7/28/2005 | 813 | $81.08 | $65,918.04 |
| | 7/28/2005 | 423 | $81.08 | $34,296.84 |
| | 7/28/2005 | 1,500 | $81.09 | $121,635.00 |
| | 7/28/2005 | 766 | $81.09 | $62,114.94 |
| | 7/28/2005 | 2,350 | $81.10 | $190,585.00 |
| | 7/28/2005 | 2,296 | $81.10 | $186,205.60 |
| | 7/28/2005 | 2,231 | $81.10 | $180,934.10 |
| | 7/28/2005 | 1,873 | $81.10 | $151,900.30 |
| | 7/28/2005 | 685 | $81.10 | $55,553.50 |
| | 7/28/2005 | 1,700 | $81.11 | $137,887.00 |
| | 7/28/2005 | 1,032 | $81.11 | $83,705.52 |
| | 7/28/2005 | 957 | $81.11 | $77,622.27 |
| | 7/28/2005 | 165 | $81.11 | $13,383.15 |
| | 7/28/2005 | 2,781 | $81.12 | $225,594.72 |
| | 7/28/2005 | 2,200 | $81.12 | $178,464.00 |
| | 7/28/2005 | 1,800 | $81.12 | $146,016.00 |
| | 7/28/2005 | 1,400 | $81.12 | $113,568.00 |
| | 7/28/2005 | 1,200 | $81.12 | $97,344.00 |
| | 7/28/2005 | 1,815 | $81.13 | $147,250.95 |
| | 7/28/2005 | 1,616 | $81.13 | $131,106.08 |
| | 7/28/2005 | 1,500 | $81.13 | $121,695.00 |
| | 7/28/2005 | 1,212 | $81.13 | $98,329.56 |
| | 7/28/2005 | 1,100 | $81.13 | $89,243.00 |
| | 7/28/2005 | 1,064 | $81.13 | $86,322.32 |
| | 7/28/2005 | 565 | $81.13 | $45,838.45 |
| | 7/28/2005 | 2,692 | $81.14 | $218,428.88 |
| | 7/28/2005 | 1,657 | $81.14 | $134,448.98 |
| | 7/28/2005 | 687 | $81.14 | $55,743.18 |
| | 7/28/2005 | 1,400 | $81.15 | $113,610.00 |
| | 7/28/2005 | 1,100 | $81.15 | $89,265.00 |
| | 7/28/2005 | 600 | $81.15 | $48,690.00 |
| | 7/28/2005 | 1,828 | $81.16 | $148,360.48 |
| | 7/28/2005 | 1,300 | $81.16 | $105,508.00 |
| | 7/28/2005 | 1,250 | $81.16 | $101,450.00 |
| | 7/28/2005 | 151 | $81.16 | $12,255.16 |
| | 7/28/2005 | 2,700 | $81.17 | $219,159.00 |
| | 7/28/2005 | 1,300 | $81.17 | $105,521.00 |
| | 7/28/2005 | 56 | $81.17 | $4,545.52 |
| | 7/28/2005 | 625 | $81.18 | $50,737.50 |
| | 7/28/2005 | 2,011 | $81.19 | $163,273.09 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 7/28/2005 | 1,685 | $81.19 | $136,805.15 |
| | 7/28/2005 | 1,344 | $81.19 | $109,119.36 |
| | 7/28/2005 | 289 | $81.19 | $23,463.91 |
| | 7/28/2005 | 900 | $81.20 | $73,080.00 |
| | 7/28/2005 | 1,200 | $81.21 | $97,452.00 |
| | 7/28/2005 | 2,301 | $81.22 | $186,887.22 |
| | 7/28/2005 | 8 | $81.22 | $649.76 |
| | 7/28/2005 | 3,056 | $81.23 | $248,238.88 |
| | 7/28/2005 | 1,200 | $81.23 | $97,476.00 |
| | 7/28/2005 | 1,448 | $81.24 | $117,635.52 |
| | 7/28/2005 | 69 | $81.26 | $5,606.94 |
| | 7/28/2005 | 99 | $81.27 | $8,045.73 |
| | 7/28/2005 | 2,200 | $81.28 | $178,816.00 |
| | 7/28/2005 | 2,600 | $81.29 | $211,354.00 |
| | 7/28/2005 | 1,700 | $81.30 | $138,210.00 |
| | 7/28/2005 | 52 | $81.32 | $4,228.64 |
| | 7/28/2005 | 2,200 | $81.37 | $179,014.00 |
| | 7/28/2005 | 3,000 | $81.39 | $244,170.00 |
| | 7/28/2005 | 2,300 | $81.40 | $187,220.00 |
| | 7/28/2005 | 2,066 | $81.40 | $168,172.40 |
| | 7/28/2005 | 34 | $81.40 | $2,767.60 |
| | 7/28/2005 | 200 | $81.42 | $16,284.00 |
| | 7/28/2005 | 2,397 | $81.44 | $195,211.68 |
| | 7/28/2005 | 1,000 | $81.44 | $81,440.00 |
| | 7/28/2005 | 200 | $81.46 | $16,292.00 |
| | 7/28/2005 | 2,638 | $81.47 | $214,917.86 |
| | 7/28/2005 | 103 | $81.48 | $8,392.44 |
| | 7/28/2005 | 62 | $81.49 | $5,052.38 |
| | 7/28/2005 | 2,186 | $81.50 | $178,159.00 |
| | 7/28/2005 | 82 | $81.52 | $6,684.64 |
| | 11/8/2005 | 400 | $79.45 | $31,780.00 |
| | 11/8/2005 | 24 | $79.45 | $1,906.80 |
| | 11/8/2005 | 785 | $79.46 | $62,376.10 |
| | 11/8/2005 | 2,400 | $79.47 | $190,728.00 |
| | 11/8/2005 | 1,999 | $79.48 | $158,880.52 |
| | 11/8/2005 | 88 | $79.48 | $6,994.24 |
| | 11/8/2005 | 5,891 | $79.49 | $468,275.59 |
| | 11/8/2005 | 700 | $79.49 | $55,643.00 |
| | 11/8/2005 | 17 | $79.49 | $1,351.33 |
| | 11/8/2005 | 2,500 | $79.50 | $198,750.00 |
| | 11/8/2005 | 100 | $79.50 | $7,950.00 |
| | 11/8/2005 | 96 | $79.50 | $7,632.00 |
| | 11/8/2005 | 321 | $79.51 | $25,522.71 |
| | 11/8/2005 | 74 | $79.51 | $5,883.74 |
| | 11/8/2005 | 700 | $79.52 | $55,664.00 |
| | 11/8/2005 | 100 | $79.52 | $7,952.00 |
| | 11/8/2005 | 5,476 | $79.53 | $435,506.28 |
| | 11/8/2005 | 1,100 | $79.53 | $87,483.00 |
| | 11/8/2005 | 10 | $79.53 | $795.30 |
| | 11/8/2005 | 600 | $79.54 | $47,724.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 11/8/2005 | 5,000 | $79.55 | $397,750.00 |
| | 11/8/2005 | 700 | $79.55 | $55,685.00 |
| | 11/8/2005 | 1,300 | $79.56 | $103,428.00 |
| | 11/8/2005 | 4,773 | $79.57 | $379,787.61 |
| | 11/8/2005 | 2,450 | $79.57 | $194,946.50 |
| | 11/8/2005 | 200 | $79.57 | $15,914.00 |
| | 11/8/2005 | 87 | $79.57 | $6,922.59 |
| | 11/8/2005 | 140 | $79.58 | $11,141.20 |
| | 11/8/2005 | 6,000 | $79.59 | $477,540.00 |
| | 11/8/2005 | 200 | $79.59 | $15,918.00 |
| | 11/8/2005 | 7,400 | $79.62 | $589,188.00 |
| | 11/8/2005 | 200 | $79.62 | $15,924.00 |
| | 11/8/2005 | 169 | $79.62 | $13,455.78 |
| | 11/8/2005 | 100 | $79.62 | $7,962.00 |
| | 11/8/2005 | 100 | $79.63 | $7,963.00 |
| | 11/8/2005 | 30 | $79.63 | $2,388.90 |
| | 11/8/2005 | 6,145 | $79.64 | $489,387.80 |
| | 11/8/2005 | 4,531 | $79.64 | $360,848.84 |
| | 11/8/2005 | 4,100 | $79.64 | $326,524.00 |
| | 11/8/2005 | 3,389 | $79.64 | $269,899.96 |
| | 11/8/2005 | 166 | $79.64 | $13,220.24 |
| | 11/8/2005 | 5,400 | $79.65 | $430,110.00 |
| | 11/8/2005 | 3,800 | $79.65 | $302,670.00 |
| | 11/8/2005 | 3,546 | $79.65 | $282,438.90 |
| | 11/8/2005 | 100 | $79.65 | $7,965.00 |
| | 11/8/2005 | 69 | $79.65 | $5,495.85 |
| | 11/8/2005 | 493 | $79.66 | $39,272.38 |
| | 11/8/2005 | 300 | $79.66 | $23,898.00 |
| | 11/8/2005 | 50 | $79.66 | $3,983.00 |
| | 11/8/2005 | 300 | $79.67 | $23,901.00 |
| | 11/8/2005 | 100 | $79.67 | $7,967.00 |
| | 11/8/2005 | 1,600 | $79.68 | $127,488.00 |
| | 11/8/2005 | 86 | $79.68 | $6,852.48 |
| | 11/8/2005 | 2,914 | $79.69 | $232,216.66 |
| | 11/8/2005 | 1,500 | $79.69 | $119,535.00 |
| | 11/8/2005 | 5,476 | $79.70 | $436,437.20 |
| | 11/8/2005 | 4,337 | $79.70 | $345,658.90 |
| | 11/8/2005 | 1,100 | $79.70 | $87,670.00 |
| | 11/8/2005 | 171 | $79.70 | $13,628.70 |
| | 11/8/2005 | 100 | $79.70 | $7,970.00 |
| | 11/8/2005 | 4,100 | $79.71 | $326,811.00 |
| | 11/8/2005 | 1,585 | $79.71 | $126,340.35 |
| | 11/8/2005 | 263 | $79.71 | $20,963.73 |
| | 11/8/2005 | 115 | $79.71 | $9,166.65 |
| | 11/8/2005 | 100 | $79.72 | $7,972.00 |
| | 11/8/2005 | 58 | $79.72 | $4,623.76 |
| | 11/8/2005 | 4,400 | $79.73 | $350,812.00 |
| | 11/8/2005 | 400 | $79.73 | $31,892.00 |
| | 11/8/2005 | 45 | $79.73 | $3,587.85 |
| | 11/8/2005 | 1,100 | $79.74 | $87,714.00 |

- 35 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | 11/8/2005 | 1,100 | $79.70 | $87,670.00 |
|---|---|---|---|---|---|
| 1 | | 11/8/2005 | 3,604 | $79.75 | $287,419.00 |
| 2 | | 11/8/2005 | 900 | $79.75 | $71,775.00 |
| 3 | | 11/8/2005 | 362 | $79.75 | $28,869.50 |
| | | 11/8/2005 | 73 | $79.75 | $5,821.75 |
| 4 | | 11/8/2005 | 6,800 | $79.76 | $542,368.00 |
| | | 11/8/2005 | 4,000 | $79.76 | $319,040.00 |
| 5 | | 11/8/2005 | 3,600 | $79.76 | $287,136.00 |
| 6 | | 11/8/2005 | 1,100 | $79.76 | $87,736.00 |
| | | 11/8/2005 | 400 | $79.77 | $31,908.00 |
| 7 | | 11/8/2005 | 200 | $79.77 | $15,954.00 |
| | | 11/8/2005 | 21 | $79.77 | $1,675.17 |
| 8 | | 11/8/2005 | 6,117 | $79.78 | $488,014.26 |
| 9 | | 11/8/2005 | 1,500 | $79.78 | $119,670.00 |
| | | 11/8/2005 | 1,150 | $79.78 | $91,747.00 |
| 10 | | 11/8/2005 | 400 | $79.78 | $31,912.00 |
| | | 11/8/2005 | 250 | $79.78 | $19,945.00 |
| 11 | | 11/8/2005 | 100 | $79.78 | $7,978.00 |
| | | 11/8/2005 | 5,535 | $79.79 | $441,637.65 |
| 12 | | 11/8/2005 | 4,400 | $79.79 | $351,076.00 |
| 13 | | 11/8/2005 | 1,000 | $79.79 | $79,790.00 |
| | | 11/8/2005 | 500 | $79.79 | $39,895.00 |
| 14 | | 11/8/2005 | 221 | $79.79 | $17,633.59 |
| | | 11/8/2005 | 51,921 | $79.80 | $4,143,295.80 |
| 15 | | 11/8/2005 | 5,305 | $80.06 | $424,718.30 |
| | | 11/8/2005 | 400 | $79.80 | $31,920.00 |
| 16 | | 11/8/2005 | 296 | $79.80 | $23,620.80 |
| 17 | | 11/8/2005 | 100 | $79.80 | $7,980.00 |
| | | 11/8/2005 | 5,100 | $79.81 | $407,031.00 |
| 18 | | 11/8/2005 | 4,550 | $79.81 | $363,135.50 |
| | | 11/8/2005 | 100 | $79.81 | $7,981.00 |
| 19 | | 11/8/2005 | 27 | $79.81 | $2,154.87 |
| 20 | | 11/8/2005 | 2,814 | $79.82 | $224,613.48 |
| | | 11/8/2005 | 600 | $79.82 | $47,892.00 |
| 21 | | 11/8/2005 | 5,100 | $79.83 | $407,133.00 |
| | | 11/8/2005 | 3,700 | $79.83 | $295,371.00 |
| 22 | | 11/8/2005 | 430 | $79.83 | $34,326.90 |
| 23 | | 11/8/2005 | 23 | $79.83 | $1,836.09 |
| | | 11/8/2005 | 5,200 | $79.84 | $415,168.00 |
| 24 | | 11/8/2005 | 2,024 | $79.84 | $161,596.16 |
| | | 11/8/2005 | 220 | $79.84 | $17,564.80 |
| 25 | | 11/8/2005 | 500 | $79.85 | $39,925.00 |
| | | 11/8/2005 | 246 | $79.85 | $19,643.10 |
| 26 | | 11/8/2005 | 700 | $79.86 | $55,902.00 |
| | | 11/8/2005 | 187 | $79.86 | $14,933.82 |
| 27 | | 11/8/2005 | 5,522 | $79.87 | $441,042.14 |
| | | 11/8/2005 | 200 | $79.87 | $15,974.00 |
| 28 | | 11/8/2005 | 180 | $79.87 | $14,376.60 |
| | | 11/8/2005 | 3,260 | $79.88 | $260,408.80 |
| | | 11/8/2005 | 300 | $79.90 | $23,970.00 |

- 36 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | 11/8/2005 | 3,700 | $79.92 | $295,704.00 |
|---|---|---|---|---|
| | 11/8/2005 | 52 | $79.92 | $4,155.84 |
| | 11/8/2005 | 20 | $79.93 | $1,598.60 |
| | 11/8/2005 | 3,948 | $79.94 | $315,603.12 |
| | 11/8/2005 | 300 | $79.94 | $23,982.00 |
| | 11/8/2005 | 200 | $79.94 | $15,988.00 |
| | 11/8/2005 | 100 | $79.95 | $7,995.00 |
| | 11/8/2005 | 100 | $79.95 | $7,995.00 |
| | 11/8/2005 | 4,465 | $79.96 | $357,021.40 |
| | 11/8/2005 | 200 | $79.96 | $15,992.00 |
| | 11/8/2005 | 163 | $79.96 | $13,033.48 |
| | 11/8/2005 | 100 | $79.97 | $7,997.00 |
| | 11/8/2005 | 72 | $79.97 | $5,757.84 |
| | 11/8/2005 | 800 | $80.00 | $64,000.00 |
| | 11/8/2005 | 90 | $80.00 | $7,200.00 |
| | 11/8/2005 | 9,900 | $80.01 | $792,099.00 |
| | 11/8/2005 | 1,200 | $80.01 | $96,012.00 |
| | 11/8/2005 | 100 | $80.01 | $8,001.00 |
| | 11/8/2005 | 1,400 | $80.02 | $112,028.00 |
| | 11/8/2005 | 34 | $80.02 | $2,720.68 |
| | 11/8/2005 | 4,103 | $80.03 | $328,363.09 |
| | 11/8/2005 | 100 | $80.03 | $8,003.00 |
| | 11/8/2005 | 100 | $80.03 | $8,003.00 |
| | 11/8/2005 | 27,600 | $80.04 | $2,209,104.00 |
| | 11/8/2005 | 5,300 | $80.04 | $424,212.00 |
| | 11/8/2005 | 3,500 | $80.04 | $280,140.00 |
| | 11/8/2005 | 600 | $80.04 | $48,024.00 |
| | 11/8/2005 | 4 | $80.04 | $320.16 |
| | 11/8/2005 | 4,500 | $80.05 | $360,225.00 |
| | 11/8/2005 | 3,004 | $80.05 | $240,470.20 |
| | 11/8/2005 | 2,900 | $80.05 | $232,145.00 |
| | 11/8/2005 | 1,700 | $80.05 | $136,085.00 |
| | 11/8/2005 | 299 | $80.05 | $23,934.95 |
| | 11/8/2005 | 4,200 | $80.06 | $336,252.00 |
| | 11/8/2005 | 2,345 | $80.06 | $187,740.70 |
| | 11/8/2005 | 5,305 | $80.06 | $424,718.30 |
| | 11/8/2005 | 5,330 | $80.06 | $426,719.80 |
| | 11/8/2005 | 1,996 | $80.06 | $159,799.76 |
| | 11/8/2005 | 1,200 | $80.06 | $96,072.00 |
| | 11/8/2005 | 163 | $80.06 | $13,049.78 |
| | 11/8/2005 | 542 | $80.07 | $43,397.94 |
| | 11/8/2005 | 200 | $80.07 | $16,014.00 |
| | 11/8/2005 | 4,400 | $80.08 | $352,352.00 |
| | 11/8/2005 | 227 | $80.08 | $18,178.16 |
| | 11/8/2005 | 4,246 | $80.09 | $340,062.14 |
| | 11/8/2005 | 300 | $80.09 | $24,027.00 |
| | 11/8/2005 | 109 | $80.09 | $8,729.81 |
| | 11/8/2005 | 31 | $80.09 | $2,482.79 |
| | 11/8/2005 | 5,013 | $80.10 | $401,541.30 |
| | 11/8/2005 | 2,200 | $80.10 | $176,220.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | 11/8/2005 | 1,992 | $80.10 | $159,559.20 |
|---|---|---|---|---|---|
| | | 11/8/2005 | 800 | $80.10 | $64,080.00 |
| | | 11/8/2005 | 585 | $80.10 | $46,858.50 |
| | | 11/8/2005 | 4,707 | $80.11 | $377,077.77 |
| | | 11/8/2005 | 3,469 | $80.11 | $277,901.59 |
| | | 11/8/2005 | 2,655 | $80.11 | $212,692.05 |
| | | 11/8/2005 | 2,400 | $80.11 | $192,264.00 |
| | | 11/8/2005 | 2,000 | $80.11 | $160,220.00 |
| | | 11/8/2005 | 1,700 | $80.11 | $136,187.00 |
| | | 11/8/2005 | 143 | $80.11 | $11,455.73 |
| | | 11/8/2005 | 12 | $80.11 | $961.32 |
| | | 11/8/2005 | 3,696 | $80.12 | $296,123.52 |
| | | 11/8/2005 | 2,750 | $80.12 | $220,330.00 |
| | | 11/8/2005 | 2,211 | $80.12 | $177,145.32 |
| | | 11/8/2005 | 80 | $80.12 | $6,409.60 |
| | | 11/8/2005 | 70 | $80.12 | $5,608.40 |
| | | 11/8/2005 | 3,609 | $80.13 | $289,189.17 |
| | | 11/8/2005 | 3,097 | $80.13 | $248,162.61 |
| | | 11/8/2005 | 2,600 | $80.13 | $208,338.00 |
| | | 11/8/2005 | 253 | $80.13 | $20,272.89 |
| | | 11/8/2005 | 100 | $80.13 | $8,013.00 |
| | | 11/8/2005 | 90 | $80.13 | $7,211.70 |
| | | 11/8/2005 | 3,100 | $80.14 | $248,434.00 |
| | | 11/8/2005 | 2,530 | $80.14 | $202,754.20 |
| | | 11/8/2005 | 2,514 | $80.14 | $201,471.96 |
| | | 11/8/2005 | 1,400 | $80.14 | $112,196.00 |
| | | 11/8/2005 | 578 | $80.14 | $46,320.92 |
| | | 11/8/2005 | 380 | $80.14 | $30,453.20 |
| | | 11/8/2005 | 5,600 | $80.15 | $448,840.00 |
| | | 11/8/2005 | 4,946 | $80.15 | $396,421.90 |
| | | 11/8/2005 | 3,716 | $80.15 | $297,837.40 |
| | | 11/8/2005 | 3,530 | $80.15 | $282,929.50 |
| | | 11/8/2005 | 2,000 | $80.15 | $160,300.00 |
| | | 11/8/2005 | 1,300 | $80.15 | $104,195.00 |
| | | 11/8/2005 | 402 | $80.15 | $32,220.30 |
| | | 11/8/2005 | 5,606 | $80.16 | $449,376.96 |
| | | 11/8/2005 | 4,500 | $80.16 | $360,720.00 |
| | | 11/8/2005 | 1,600 | $80.16 | $128,256.00 |
| | | 11/8/2005 | 3 | $80.16 | $240.48 |
| | | 11/8/2005 | 4,600 | $80.17 | $368,782.00 |
| | | 11/8/2005 | 900 | $80.17 | $72,153.00 |
| | | 11/8/2005 | 4,664 | $80.18 | $373,959.52 |
| | | 11/8/2005 | 2,500 | $80.18 | $200,450.00 |
| | | 11/8/2005 | 200 | $80.18 | $16,036.00 |
| | | 11/8/2005 | 3,400 | $80.19 | $272,646.00 |
| | | 11/8/2005 | 2,700 | $80.19 | $216,513.00 |
| | | 11/8/2005 | 320 | $80.19 | $25,660.80 |
| | | 11/8/2005 | 54 | $80.19 | $4,330.26 |
| | | 11/8/2005 | 4,800 | $80.20 | $384,960.00 |
| | | 11/8/2005 | 900 | $80.20 | $72,180.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 11/8/2005 | 3,700 | $80.21 | $296,777.00 |
| | 11/8/2005 | 3,027 | $80.21 | $242,795.67 |
| | 11/8/2005 | 100 | $80.21 | $8,021.00 |
| | 11/8/2005 | 85 | $80.21 | $6,817.85 |
| | 11/8/2005 | 3,700 | $80.22 | $296,814.00 |
| | 11/8/2005 | 3,200 | $80.22 | $256,704.00 |
| | 11/8/2005 | 701 | $80.22 | $56,234.22 |
| | 11/8/2005 | 200 | $80.22 | $16,044.00 |
| | 11/8/2005 | 109 | $80.22 | $8,743.98 |
| | 11/8/2005 | 100 | $80.23 | $8,023.00 |
| | 11/8/2005 | 3,200 | $80.24 | $256,768.00 |
| | 11/8/2005 | 100 | $80.24 | $8,024.00 |
| | 11/8/2005 | 600 | $80.25 | $48,150.00 |
| | 11/8/2005 | 178 | $80.25 | $14,284.50 |
| | 11/8/2005 | 5,800 | $80.26 | $465,508.00 |
| | 11/8/2005 | 400 | $80.26 | $32,104.00 |
| | 11/8/2005 | 100 | $80.27 | $8,027.00 |
| | 11/8/2005 | 100 | $80.28 | $8,028.00 |
| | 11/8/2005 | 71 | $80.28 | $5,699.88 |
| | 11/8/2005 | 29 | $80.28 | $2,328.12 |
| | 11/8/2005 | 2,500 | $80.29 | $200,725.00 |
| | 11/8/2005 | 400 | $80.29 | $32,116.00 |
| | 11/8/2005 | 500 | $80.30 | $40,150.00 |
| | 11/8/2005 | 175 | $80.30 | $14,052.50 |
| | 11/8/2005 | 5,200 | $80.31 | $417,612.00 |
| | 11/8/2005 | 200 | $80.31 | $16,062.00 |
| | 11/8/2005 | 90 | $80.31 | $7,227.90 |
| | 11/8/2005 | 10 | $80.31 | $803.10 |
| | 11/8/2005 | 6,300 | $80.32 | $506,016.00 |
| | 11/8/2005 | 300 | $80.32 | $24,096.00 |
| | 11/8/2005 | 100 | $80.33 | $8,033.00 |
| | 11/8/2005 | 3,200 | $80.34 | $257,088.00 |
| | 11/8/2005 | 1,100 | $80.35 | $88,385.00 |
| | 11/8/2005 | 50 | $80.35 | $4,017.50 |
| | 11/8/2005 | 4,300 | $80.36 | $345,548.00 |
| | 11/8/2005 | 1,400 | $80.36 | $112,504.00 |
| | 11/8/2005 | 100 | $80.36 | $8,036.00 |
| | 11/8/2005 | 50 | $80.36 | $4,018.00 |
| | 11/8/2005 | 4,000 | $80.37 | $321,480.00 |
| | 11/8/2005 | 4,538 | $80.38 | $364,764.44 |
| | 11/8/2005 | 1,081 | $80.38 | $86,890.78 |
| | 11/8/2005 | 500 | $80.38 | $40,190.00 |
| | 11/8/2005 | 4,283 | $80.39 | $344,310.37 |
| | 11/8/2005 | 2,000 | $80.39 | $160,780.00 |
| | 11/8/2005 | 172 | $80.39 | $13,827.08 |
| | 11/8/2005 | 100 | $80.39 | $8,039.00 |
| | 11/8/2005 | 19 | $80.39 | $1,527.41 |
| | 11/8/2005 | 4,500 | $80.40 | $361,800.00 |
| | 11/8/2005 | 4,250 | $80.40 | $341,700.00 |
| | 11/8/2005 | 3,200 | $80.40 | $257,280.00 |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | 11/8/2005 | 2,441 | $80.40 | $196,256.40 |
|---|---|---|---|---|---|
| | | 11/8/2005 | 490 | $80.40 | $39,396.00 |
| | | 11/8/2005 | 400 | $80.40 | $32,160.00 |
| | | 11/8/2005 | 400 | $80.40 | $32,160.00 |
| | | 11/8/2005 | 100 | $80.40 | $8,040.00 |
| | | 11/8/2005 | 3,686 | $80.41 | $296,391.26 |
| | | 11/8/2005 | 2,087 | $80.41 | $167,815.67 |
| | | 11/8/2005 | 1,213 | $80.41 | $97,537.33 |
| | | 11/8/2005 | 417 | $80.41 | $33,530.97 |
| | | 11/8/2005 | 100 | $80.41 | $8,041.00 |
| | | 11/8/2005 | 5,300 | $80.42 | $426,226.00 |
| | | 11/8/2005 | 4,199 | $80.42 | $337,683.58 |
| | | 11/8/2005 | 3,725 | $80.42 | $299,564.50 |
| | | 11/8/2005 | 3,265 | $80.42 | $262,571.30 |
| | | 11/8/2005 | 3,024 | $80.42 | $243,190.08 |
| | | 11/8/2005 | 2,872 | $80.42 | $230,966.24 |
| | | 11/8/2005 | 379 | $80.42 | $30,479.18 |
| | | 11/8/2005 | 110 | $80.42 | $8,846.20 |
| | | 11/8/2005 | 3,889 | $80.43 | $312,792.27 |
| | | 11/8/2005 | 765 | $80.43 | $61,528.95 |
| | | 11/8/2005 | 700 | $80.43 | $56,301.00 |
| | | 11/8/2005 | 50 | $80.43 | $4,021.50 |
| | | 11/8/2005 | 7,644 | $80.44 | $614,883.36 |
| | | 11/8/2005 | 7,400 | $80.44 | $595,256.00 |
| | | 11/8/2005 | 3,408 | $80.44 | $274,139.52 |
| | | 11/8/2005 | 854 | $80.44 | $68,695.76 |
| | | 11/8/2005 | 839 | $80.44 | $67,489.16 |
| | | 11/8/2005 | 300 | $80.44 | $24,132.00 |
| | | 11/8/2005 | 200 | $80.44 | $16,088.00 |
| | | 11/8/2005 | 5,289 | $80.45 | $425,500.05 |
| | | 11/8/2005 | 4,600 | $80.45 | $370,070.00 |
| | | 11/8/2005 | 4,100 | $80.45 | $329,845.00 |
| | | 11/8/2005 | 4,085 | $80.45 | $328,638.25 |
| | | 11/8/2005 | 2,575 | $80.45 | $207,158.75 |
| | | 11/8/2005 | 2,273 | $80.45 | $182,862.85 |
| | | 11/8/2005 | 237 | $80.45 | $19,066.65 |
| | | 11/8/2005 | 99 | $80.45 | $7,964.55 |
| | | 11/8/2005 | 4,076 | $80.46 | $327,954.96 |
| | | 11/8/2005 | 3,018 | $80.46 | $242,828.28 |
| | | 11/8/2005 | 245 | $80.46 | $19,712.70 |
| | | 11/8/2005 | 195 | $80.46 | $15,689.70 |
| | | 11/8/2005 | 5,981 | $80.47 | $481,291.07 |
| | | 11/8/2005 | 5,925 | $80.47 | $476,784.75 |
| | | 11/8/2005 | 5,600 | $80.47 | $450,632.00 |
| | | 11/8/2005 | 4,300 | $80.47 | $346,021.00 |
| | | 11/8/2005 | 4,208 | $80.47 | $338,617.76 |
| | | 11/8/2005 | 2,500 | $80.47 | $201,175.00 |
| | | 11/8/2005 | 2,419 | $80.47 | $194,656.93 |
| | | 11/8/2005 | 218 | $80.47 | $17,542.46 |
| | | 11/8/2005 | 4,600 | $80.48 | $370,208.00 |

- 40 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 11/8/2005 | 600 | $80.48 | $48,288.00 |
| | 11/8/2005 | 500 | $80.48 | $40,240.00 |
| | 11/8/2005 | 424 | $80.48 | $34,123.52 |
| | 11/8/2005 | 325 | $80.48 | $26,156.00 |
| | 11/8/2005 | 4,878 | $80.49 | $392,630.22 |
| | 11/8/2005 | 4,684 | $80.49 | $377,015.16 |
| | 11/8/2005 | 4,595 | $80.49 | $369,851.55 |
| | 11/8/2005 | 4,100 | $80.49 | $330,009.00 |
| | 11/8/2005 | 3,414 | $80.49 | $274,792.86 |
| | 11/8/2005 | 2,200 | $80.49 | $177,078.00 |
| | 11/8/2005 | 435 | $80.49 | $35,013.15 |
| | 11/8/2005 | 100 | $80.49 | $8,049.00 |
| | 11/8/2005 | 6,296 | $80.50 | $506,828.00 |
| | 11/8/2005 | 4,600 | $80.50 | $370,300.00 |
| | 11/8/2005 | 1,100 | $80.50 | $88,550.00 |
| | 11/8/2005 | 753 | $80.50 | $60,616.50 |
| | 11/8/2005 | 88 | $80.50 | $7,084.00 |
| | 11/8/2005 | 14 | $80.50 | $1,127.00 |
| | 11/8/2005 | 5,521 | $80.51 | $444,495.71 |
| | 11/8/2005 | 5,300 | $80.51 | $426,703.00 |
| | 11/8/2005 | 3,800 | $80.51 | $305,938.00 |
| | 11/8/2005 | 3,200 | $80.51 | $257,632.00 |
| | 11/8/2005 | 1,900 | $80.51 | $152,969.00 |
| | 11/8/2005 | 1,900 | $80.51 | $152,969.00 |
| | 11/8/2005 | 300 | $80.51 | $24,153.00 |
| | 11/8/2005 | 170 | $80.51 | $13,686.70 |
| | 11/8/2005 | 7,400 | $80.52 | $595,848.00 |
| | 11/8/2005 | 5,268 | $80.52 | $424,179.36 |
| | 11/8/2005 | 4,450 | $80.52 | $358,314.00 |
| | 11/8/2005 | 4,389 | $80.52 | $353,402.28 |
| | 11/8/2005 | 4,002 | $80.52 | $322,241.04 |
| | 11/8/2005 | 2,900 | $80.52 | $233,508.00 |
| | 11/8/2005 | 177 | $80.52 | $14,252.04 |
| | 11/8/2005 | 5,100 | $80.53 | $410,703.00 |
| | 11/8/2005 | 3,628 | $80.53 | $292,162.84 |
| | 11/8/2005 | 2,457 | $80.53 | $197,862.21 |
| | 11/8/2005 | 845 | $80.53 | $68,047.85 |
| | 11/8/2005 | 349 | $80.53 | $28,104.97 |
| | 11/8/2005 | 4,295 | $80.54 | $345,919.30 |
| | 11/8/2005 | 2,786 | $80.54 | $224,384.44 |
| | 11/8/2005 | 500 | $80.54 | $40,270.00 |
| | 11/8/2005 | 282 | $80.54 | $22,712.28 |
| | 11/8/2005 | 1,900 | $80.55 | $153,045.00 |
| | 11/8/2005 | 213 | $80.55 | $17,157.15 |
| | 11/8/2005 | 75 | $80.55 | $6,041.25 |
| | 11/8/2005 | 6,000 | $80.56 | $483,360.00 |
| | 11/8/2005 | 400 | $80.56 | $32,224.00 |
| | 11/8/2005 | 60 | $80.56 | $4,833.60 |
| | 11/8/2005 | 11 | $80.57 | $886.27 |
| | 11/8/2005 | 5,200 | $80.58 | $419,016.00 |

- 41 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | 11/8/2005 | 115 | $80.58 | $9,266.70 |
|---|---|---|---|---|---|
| | | 11/8/2005 | 1,000 | $80.59 | $80,590.00 |
| | | 11/8/2005 | 800 | $80.59 | $64,472.00 |
| | | 11/8/2005 | 1,400 | $80.60 | $112,840.00 |
| | | 11/8/2005 | 200 | $80.60 | $16,120.00 |
| | | 11/8/2005 | 152 | $80.60 | $12,251.20 |
| | | 11/8/2005 | 6,448 | $80.62 | $519,837.76 |
| | | 11/8/2005 | 1,100 | $80.62 | $88,682.00 |
| | | 11/8/2005 | 15 | $80.62 | $1,209.30 |
| | | 11/8/2005 | 7,935 | $80.63 | $639,799.05 |
| | | 11/8/2005 | 5,330 | $80.63 | $429,757.90 |
| | | 11/8/2005 | 300 | $80.63 | $24,189.00 |
| | | 11/8/2005 | 185 | $80.63 | $14,916.55 |
| | | 11/8/2005 | 200 | $80.64 | $16,128.00 |
| | | 11/8/2005 | 200 | $80.64 | $16,128.00 |
| | | 11/8/2005 | 100 | $80.64 | $8,064.00 |
| | | 11/8/2005 | 7,400 | $80.65 | $596,810.00 |
| | | 11/8/2005 | 4,800 | $80.65 | $387,120.00 |
| | | 11/8/2005 | 200 | $80.65 | $16,130.00 |
| | | 11/8/2005 | 200 | $80.65 | $16,130.00 |
| | | 11/8/2005 | 300 | $80.66 | $24,198.00 |
| | | 11/8/2005 | 900 | $80.67 | $72,603.00 |
| | | 11/8/2005 | 244 | $80.67 | $19,683.48 |
| | | 11/8/2005 | 100 | $80.67 | $8,067.00 |
| | | 11/8/2005 | 6,700 | $80.68 | $540,556.00 |
| | | 11/8/2005 | 6,300 | $80.68 | $508,284.00 |
| | | 11/8/2005 | 4,600 | $80.68 | $371,128.00 |
| | | 11/8/2005 | 2,000 | $80.68 | $161,360.00 |
| | | 11/8/2005 | 122 | $80.68 | $9,842.96 |
| | | 11/8/2005 | 100 | $80.68 | $8,068.00 |
| | | 11/8/2005 | 7,892 | $80.69 | $636,805.48 |
| | | 11/8/2005 | 1,100 | $80.69 | $88,759.00 |
| | | 11/8/2005 | 200 | $80.69 | $16,138.00 |
| | | 11/8/2005 | 100 | $80.69 | $8,069.00 |
| | | 11/8/2005 | 3,900 | $80.70 | $314,730.00 |
| | | 11/8/2005 | 2,695 | $80.70 | $217,486.50 |
| | | 11/8/2005 | 198 | $80.70 | $15,978.60 |
| | | 11/8/2005 | 6,151 | $80.71 | $496,447.21 |
| | | 11/8/2005 | 6,102 | $80.71 | $492,492.42 |
| | | 11/8/2005 | 5,005 | $80.71 | $403,953.55 |
| | | 11/8/2005 | 500 | $80.71 | $40,355.00 |
| | | 11/8/2005 | 301 | $80.71 | $24,293.71 |
| | | 11/8/2005 | 46 | $80.71 | $3,712.66 |
| | | 11/8/2005 | 845 | $80.72 | $68,208.40 |
| | | 11/8/2005 | 277 | $80.72 | $22,359.44 |
| | | 11/8/2005 | 55 | $80.72 | $4,439.60 |
| | | 11/8/2005 | 6,348 | $80.73 | $512,474.04 |
| | | 11/8/2005 | 3,944 | $80.73 | $318,399.12 |
| | | 11/8/2005 | 1,100 | $80.73 | $88,803.00 |
| | | 11/8/2005 | 1,000 | $80.73 | $80,730.00 |

- 42 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

| | | | | |
|---|---|---|---|---|
| | 11/8/2005 | 151 | $80.73 | $12,190.23 |
| | 11/8/2005 | 5,052 | $80.74 | $407,898.48 |
| | 11/8/2005 | 186 | $80.74 | $15,017.64 |
| | 11/8/2005 | 100 | $80.74 | $8,074.00 |
| | 11/8/2005 | 6,300 | $80.75 | $508,725.00 |
| | 11/8/2005 | 1,100 | $80.75 | $88,825.00 |
| | 11/8/2005 | 48 | $80.75 | $3,876.00 |
| | 11/8/2005 | 37 | $80.75 | $2,987.75 |
| | 11/8/2005 | 4,200 | $80.76 | $339,192.00 |
| | 11/8/2005 | 462 | $80.76 | $37,311.12 |
| | 11/8/2005 | 400 | $80.76 | $32,304.00 |
| | 11/8/2005 | 200 | $80.76 | $16,152.00 |
| | 11/8/2005 | 200 | $80.77 | $16,154.00 |
| | 11/8/2005 | 13 | $80.77 | $1,050.01 |
| | 11/8/2005 | 5,589 | $80.78 | $451,479.42 |
| | 11/8/2005 | 372 | $80.78 | $30,050.16 |
| | 11/8/2005 | 28 | $80.78 | $2,261.84 |
| | 11/8/2005 | 25 | $80.78 | $2,019.50 |
| | 11/8/2005 | 4,000 | $80.79 | $323,160.00 |
| | 11/8/2005 | 126 | $80.79 | $10,179.54 |
| | 11/8/2005 | 5,058 | $80.81 | $408,736.98 |
| | 11/8/2005 | 147 | $80.82 | $11,880.54 |
| | 11/8/2005 | 100 | $80.82 | $8,082.00 |
| | 11/8/2005 | 96 | $80.82 | $7,758.72 |
| | 11/8/2005 | 200 | $80.84 | $16,168.00 |
| | 11/8/2005 | 200 | $80.84 | $16,168.00 |
| | 11/8/2005 | 100 | $80.85 | $8,085.00 |
| | 11/8/2005 | 68 | $80.85 | $5,497.80 |
| | 11/8/2005 | 200 | $80.87 | $16,174.00 |
| | 11/8/2005 | 300 | $80.88 | $24,264.00 |
| | 11/8/2005 | 100 | $80.89 | $8,089.00 |
| | | 1,221,852 | | $98,231,746.59 |
| **TOTAL** | | 2,906,338 | | $221,330,022.21 |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

65.    Plaintiff brings this action derivatively in the right and for the benefit of Amgen to redress injuries suffered, and to be suffered, by Amgen as a direct result of the violations of the Exchange Act, breaches of fiduciary duty, as well as the aiding and abetting thereof, by the Individual Defendants.  Amgen is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

66.    Plaintiff will adequately and fairly represent the interests of Amgen in enforcing and prosecuting its rights.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

67.     Plaintiff is and was an owner of the stock of Amgen during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

68.     The current Board of Amgen consists of the following ten individuals: defendants Sharer, Baltimore, Omenn, Pelham, Gluck, Choate, Reason, Biondi, Schaeffer and Herringer. Plaintiff has not made any demand on the present Board of Amgen to institute this action because such a demand would be a futile, wasteful and useless act.

69.     As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the side effects and known risks of Aranesp and Epogen. While in possession of this material adverse non-public information regarding the Company, the following current members of the Amgen Board participated in the illegal insider selling:

        (a)     During the Relevant Period, while in possession of adverse non-public information regarding the side effects and known risks of Aranesp and Epogen, Sharer sold 1,221,852 shares of Amgen stock for proceeds of $98,231,746.59;

        (b)     During the Relevant Period, while in possession of adverse non-public information regarding the side effects and known risks of Aranesp and Epogen, Baltimore sold 30,000 shares of Amgen stock for proceeds of $2,489,100;

        (c)     During the Relevant Period, while in possession of adverse non-public information regarding the side effects and known risks of Aranesp and Epogen, Omenn sold 24,805 shares of Amgen stock for proceeds of $1,736,517.70; and

        (d)     During the Relevant Period, while in possession of adverse non-public information regarding the side effects and known risks of Aranesp and Epogen, Pelham sold 16,000 shares of Amgen stock for proceeds of $1,324,320.

Because these defendants received a personal financial benefit from the challenged insider trading transactions, these defendants are interested.  Moreover, these defendants face a sufficiently

- 44 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   substantial threat of liability for breach of their fiduciary duties for insider selling.  Since these

2   directors have breached their fiduciary duties and are interested, any demand upon them is futile.

3         70.     During the Relevant Period, 98% of Amgen's revenues were derived from the sale of

4   its principal drug products, which are limited to Aranesp, Epogen and three other drugs.  Thus, the

5   stability of the Company was predicated on the Company accurately and truthfully disclosing known

6   risks of Aranesp and Epogen and marketing the drugs in a responsible manner.  Because Aranesp

7   and Epogen were critical components of Amgen's business, defendants Sharer, Baltimore, Omenn,

8   Pelham, Gluck, Choate, Reason, Biondi, Schaeffer and Herringer knew, should have known, were

9   reckless and grossly negligent in not knowing or consciously disregarded material adverse facts

10  concerning the side effects of Aranesp and Epogen.  Further, these defendants had ready access to

11  numerous red flags in the form of internal reports, email, marketing research and other documents

12  that suggested that these drugs should not be marketed for off label use, particularly for the treatment

13  of cancer induced anemia.  Despite their knowledge, these defendants consciously disregarded their

14  fiduciary duties to Amgen when, under their direction, the Company continued to expend resources

15  to market Aranesp and Epogen for off-label use.  Further, these defendants directed Amgen to

16  suppress and misrepresent data showing that more localized cancer recurrences and slightly more

17  deaths occurred in patients treated with Aranesp than in those take a placebo.  Even worse, these

18  defendants directed Amgen to encourage doctors to prescribe the drugs for off-label.  Accordingly,

19  defendants Sharer, Baltimore, Omenn, Pelham, Gluck, Choate, Reason, Biondi, Schaeffer and

20  Herringer each face a sufficiently substantial likelihood of liability for their breaches of fiduciary

21  duty to Amgen.

22        71.     During the Relevant Period, defendants Baltimore, Omenn, Pelham, Reason and

23  Schaeffer were members of the Corporate Committee.  The Corporate Committee of the Board, by

24  its charter, is responsible for assessing the Company's compliance obligations and associated risks.

25  Because the Corporate Committee was responsible for corporate compliance issues, it was

26  defendants Baltimore, Omenn, Pelham, Reason and Schaeffer duty to ensure that Amgen was

27  complying with ethical standards including the accurate reporting of risks associated with Aranesp

28  and Epogen to prospective patients and doctors.  These defendants, however, failed in this duty and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   Amgen, throughout the Relevant Period, misreported known risks concerning these drugs.  Thus,

2   defendants Baltimore, Omenn, Pelham, Reason and Schaeffer breached their fiduciary duties of due

3   care, loyalty, and good faith.  Therefore, defendants Baltimore, Omenn, Pelham, Reason and

4   Schaeffer face a sufficiently substantial likelihood of liability for their breach of fiduciary duties and

5   any demand upon them is futile.

6        72.    During the Relevant Period, defendants Baltimore, Omenn, Pelham, Biondi and

7   Herringer were members of the Audit Committee.  The Audit Committee is responsible for

8   discussing the adequacy and effectiveness o the Company's disclosure controls and procedures.

9   Defendants Baltimore, Omenn, Pelham, Biondi and Herringer breached their fiduciary duties of due

10   care, loyalty, and good faith because the Audit Committee participated in the preparation of

11   improper public statements that contained improper material information about the risks of Aranesp

12   and Epogen.  The Audit Committee also failed to ensure that Amgen complied with FDA

13   requirements concerning marketing Aranesp and Epogen for off-label use.  As a result, the Company

14   faces substantial liability in connection with improper disclosure of problems associated with

15   Aranesp and Epogen. Therefore, defendants Baltimore, Omenn, Pelham, Biondi and Herringer face

16   a sufficiently substantial likelihood of liability for their breach of fiduciary duties and any demand

17   upon them is futile.

18        73.    The principal professional occupation of defendant Sharer is his employment with

19   Amgen, pursuant to which he received and continues to receive substantial monetary compensations

20   and other benefits.  Specifically, Amgen paid defendant Sharer the following compensation during

21   the Relevant Period:

| Defendant | Fiscal Year | Salary | Bonus | Restricted Stock Awards | Approximate Value of Securities Underlying Options ($) | Securities Underlying Options | All Other Compensation |
|-----------|-------------|--------|-------|-------------------------|--------------------------------------------------------|-------------------------------|------------------------|
| Sharer | 2006 | $1,482,692 | - | $10,413,810 | 6,697,199 | - | $956,818 |
|  | 2005 | $1,390,385 | $4,500,000 | - | - | 225,000 | $731,918 |

26   Accordingly, defendant Sharer lacks independence from defendants Gluck, Choate, Reason and

27   Schaeffer, interested defendants who exert influence over defendant Sharer's compensation by virtue

28   of their position as members of the Compensation Committee.  The Compensation Committee has

- 46 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  the authority to review and approve corporate goals and objectives relevant to executive

2  compensation, including evaluating the executive's performance, and determining and approving the

3  executive's compensation level.  This lack of independence renders defendant Sharer incapable of

4  impartially considering a demand to commence and vigorously prosecute this action.

5        74.    Since September 1997, defendant Omenn has been a professor of internal medicine,

6  human genetics and public health at the University of Michigan.  From September 1997 to July

7  2002, defendant Omenn was also Executive Vice President for Medical Affairs of the University of

8  Michigan Health system.  By his specialized expertise, defendant Omenn was in a unique position to

9  understand the business of Amgen, as well as understand clinical studies indicating risk for cancer

10  patients using Aranesp and Epogen.  Because of this knowledge, defendant Omenn had a heightened

11  duty to ensure Amgen's public statements concerning the safety of the Company's pharmaceutical

12  products were accurate and truthful.  Furthermore, defendant Omenn had a duty to ensure that

13  Amgen was in compliance with all applicable FDA requirements.  Nonetheless, defendant Omenn

14  breached his duties by causing or allowing the improper public statements described herein.  As a

15  result of this defendant's breach of his duties, any demand upon him is futile.

16        75.    Defendants Sharer, Baltimore, Omenn, Pelham, Gluck, Choate, Reason, Biondi,

17  Schaeffer and Herringer as members of the Board during the Relevant Period authorized the buyback

18  of over $7.7 billion of the Company's shares at artificially inflated prices.  The Board's decision to

19  authorize the share buybacks was not the product of valid business judgment.  Further, defendants

20  Sharer, Baltimore, Omenn and Pelham engaged in self-dealing in that they sold their personally held

21  shares while directing the Company to buy shares.  Accordingly, demand is futile.

22        76.    The entire Amgen Board and senior management participated in the wrongs

23  complained of herein.  Amgen's directors are not disinterested or independent due to the following:

24  defendants Sharer, Baltimore, Omenn, Pelham, Gluck, Choate, Reason, Biondi, Schaeffer and

25  Herringer served on the Amgen Board during the Relevant Period.  Pursuant to their specific duties

26  as Board members, each was charged with the management of the Company and to conduct its

27  business affairs.  Each of the above referenced defendants breached the fiduciary duties that they

28  owed to Amgen and its shareholders in that they caused or failed to prevent and correct the improper

1   public statements concerning Aranesp and Epogen, caused or allowed the Company to market

2   Aranesp and Epogen for off-label uses. It follows that the Amgen Board cannot exercise

3   independent objective judgment in deciding whether to bring this action or whether to vigorously

4   prosecute this action because its members are interested personally in the outcome as it is their

5   actions that have subjected Amgen to potentially millions of dollars in liability for violations of

6   applicable securities laws.

7       77.    Each of the key officers and directors knew of and/or directly benefited from the

8   wrongdoing complained of herein.

9       78.    The Director Defendants of Amgen, as more fully detailed herein, participated in,

10   approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to

11   conceal or disguise those wrongs from Amgen's stockholders or recklessly and/or negligently

12   disregarded the wrongs complained of herein, and are therefore not disinterested parties.

13       79.    In order to bring this suit, all of the directors of Amgen would be forced to sue

14   themselves and persons with whom they have extensive business and personal entanglements, which

15   they will not do, thereby excusing demand.

16       80.    The acts complained of constitute violations of the fiduciary duties owed by Amgen's

17   officers and directors and these acts are incapable of ratification.

18       81.    Each of the Director Defendants of Amgen authorized and/or permitted the false

19   statements disseminated directly to the public or made directly to securities analysts and which were

20   made available and distributed to shareholders, authorized and/or permitted the issuance of various

21   of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged

22   herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by

23   them.

24       82.    Any suit by the current directors of Amgen to remedy these wrongs would likely

25   expose the Individual Defendants and Amgen to further violations of the securities laws that would

26   result in civil actions being filed against one or more of the Individual Defendants, thus, they are

27   hopelessly conflicted in making any supposedly independent determination whether to sue

28   themselves.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

83.     Amgen has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Amgen any part of the damages Amgen suffered and will suffer thereby.

84.     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against certain of them contained in class action complaints for violations of securities law, which admissions would impair the defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.  In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions.  This they will not do.  Thus, demand is futile.

85.     If Amgen's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Amgen.  However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Amgen against these defendants, known as, *inter alia*, the "insured versus insured exclusion."  As a result, if these directors were to sue themselves or certain of the officers of Amgen, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors' and officers' liability insurance at all then the current directors will not cause Amgen to sue them, since they will face a large uninsured liability.

86.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for Amgen for any of the wrongdoing alleged by plaintiff herein.

- 49 -

87.     Plaintiff has not made any demand on shareholders of Amgen to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Amgen is a publicly held company with over 1.1 billion shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Derivatively Against All Defendants for Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

88.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

89.     During the Relevant Period, the Individual Defendants disseminated or approved public statements that improperly portrayed the safety and efficacy of Amgen's Epogen and Aranesp products.  The Individual Defendants knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known that the Company's public statements concerning these drugs were misleading.

90.     The Insider Selling Defendants also sold over 2.9 million shares of Amgen's common stock at inflated prices during the Relevant Period, receiving over $221 million in proceeds, while in possession of material non-public information.  These defendants misappropriated Amgen's proprietary information and violated their so-called "abstain or disclose" duties under the federal securities laws when they sold Amgen stock without disclosing the information alleged to have been concealed herein.

91.     At the same time the price of the Company's common stock was inflated due to the improperly accounted for stock options and the Insider Selling Defendants were selling stock into the market, the Individual Defendants were causing Amgen to repurchase $7.7 billion worth of its own stock on the open market at inflated prices.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

92.     As such, the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Amgen and others in connection with their purchases of Amgen common stock during the Relevant Period.

93.     As a result of the Individual Defendants' misconduct, Amgen has and will suffer damages in that it paid artificially inflated prices for Amgen common stock purchased on the open market. Amgen would not have purchased Amgen common stock at the prices it paid, had the market previously been aware that the market price of Amgen's stock was artificially and falsely inflated by defendants' misleading statements. As a direct and proximate result of these defendants' wrongful conduct, Amgen suffered damages in connection with its purchases of Amgen common stock during the Relevant Period. By reason of such conduct, the Individual Defendants are liable to the Company pursuant to §10(b) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder.

### COUNT II

**Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

94.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

95.     At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Amgen common stock on the basis of such information.

96.     The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Amgen common stock.

97.     At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of Amgen common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

98.     Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## COUNT III

### Against All Defendants for Breach of Fiduciary Duty for Causing or Allowing Amgen to Disseminate Improper Statements

99.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.     The Individual Defendants owed and owe Amgen fiduciary obligations.  By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Amgen the highest obligation of good faith, fair dealing, loyalty and due care.

101.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

102.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the Company's public statements concerning its products and failed to correct those statements.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

103.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Amgen has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

104.     Plaintiff on behalf of Amgen has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount

- 52 -
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary

2   duties;

3        B.     Declaring that the Individual Defendants are liable under of §10(b) of the Exchange

4   Act and Rule 10b-5 promulgated thereunder and awarding Amgen damages;

5        C.     Directing Amgen to take all necessary actions to reform and improve its corporate

6   governance and internal procedures to comply with applicable laws and to protect Amgen and its

7   shareholders from a repeat of the damaging events described herein, including, but not limited to,

8   putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or

9   Articles of Incorporation and taking such other action as may be necessary to place before

10  shareholders for a vote the following Corporate Governance Policies:

11            1.     a proposal to strengthen the Board's supervision of operations and develop and

12  implement procedures for greater shareholder input into the policies and guidelines of the Board;

13            2.     control and limit insider stock selling;

14            3.     a provision to permit the shareholders of Amgen to nominate at least three

15  candidates for election to the Board;

16            4.     a proposal to ensure the accuracy of the qualifications of Amgen's directors,

17  executives and other employees;

18            5.     a proposal to strengthen the Company's procedures for the receipt, retention

19  and treatment of complaints received by the Company regarding internal controls and compliance

20  matters;

21            6.     a proposal to strengthen the veracity of the Company's public statements

22  concerning the safety and efficacy of its drug products; and

23            7.     appropriately test and then strengthen the internal audit and control functions.

24       D.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and state

25  statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust

26  on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to

27  assure that plaintiff on behalf of Amgen has an effective remedy;

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    E.    Awarding to Amgen restitution from the defendants, and each of them, and ordering

2    disgorgement of all profits, benefits and other compensation obtained by the defendants;

3    F.    Awarding to plaintiff the costs and disbursements of the action, including reasonable

4    attorneys' fees, accountants' and experts' fees, costs, and expenses; and

5    G.    Granting such other and further relief as the Court deems just and proper.

6                                   **JURY DEMAND**

7    Plaintiff demands a trial by jury.

8    DATED:  April 30, 2007                    LAW OFFICES OF DAVID M. GOLDSTEIN
                                               DAVID M. GOLDSTEIN
9

10

11                                                 DAVID M. GOLDSTEIN

12                                             10535 Foothill Blvd., Suite 300
                                               Rancho Cucamonga, CA 91730
13                                             Telephone: (909) 466-4757
                                               Facsimile:  (909) 980-5525
14
                                               THE WARNER LAW FIRM
15                                             PAUL T. WARNER
                                               6363 Woodway, Suite 910
16                                             Houston, TX  77057
                                               Telephone: (713) 783-7077
17                                             Facsimile:  (713) 583-9196

18                                             Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28   247305_4

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

I, PAUL T. WARNER, hereby declare as follows:

1.     I am counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe that the matters therein are true and on that ground allege that the matters stated therein are true.

2.     I make this Verification because the plaintiff is absent from Harris County, Texas where I maintain my office.

Executed this 2nd day of May 2007, in Houston, Texas.

PAUL T. WARNER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY DURGIN, Derivatively on behalf of AMGEN, INC.<br><br>PLAINTIFF(S)<br><br>v.<br><br><br>SEE ATTACHED<br><br>DEFENDANT(S). | CASE NUMBER<br><br><br><br><br>SUMMONS |

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
    David M. Goldstein                    , whose address is:

Law Offices of David M. Goldstein
10535 Foothill Blvd., Suite 300
Rancho Cucamonga, CA 91730

an answer to the ☑ complaint ☐_____amended complaint ☐ counterclaim ☐ cross-claim which is herewith served upon you within _20_ days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

Clerk, U.S. District Court

MAY - 7 2007

Dated: _____

By: _____   LIZ PADILLA

Deputy Clerk

*(Seal of the Court)*

MAY 1 4 2007

## ATTACHMENT TO SUMMONS

JUDY DURGIN, Derivatively on Behalf of
AMGEN, INC.,

Plaintiff,

vs.

KEVIN W. SHARER, GEORGE J. MORROW, DENNIS M. FENTON,
BRIAN MCNAMEE, ROGER M. PERLMUTTER, DAVID BALTIMORE,
GILBERT S. OMENN, JUDITH C. PELHAM, FREDERICK W. GLUCK,
JERRY D. CHOATE, J. PAUL REASON, FRANK J. BIONDI, JR.,
LEONARD D. SCHAEFFER, FRANK C. HERRINGER, RICHARD D. NANULA,
EDWARD V. FRITZKY, and   FRANKLIN P. JOHNSON, JR.,

Defendants,

- and -
AMGEN, INC., a Delaware corporation,

Nominal Defendant.

**UNITED ATES DISTRICT COURT, CENTRAL DIST. T OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

JUDY DURGIN, Derivatively on Behalf of
AMGEN, INC.

**DEFENDANTS**

KEVIN W. SHARER, et.al.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
Vermont

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

David M. Goldstein
Law Offices of David M. Goldstein
10535 Foothill Blvd., Suite 300
Rancho Cucamonga, CA  91730

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No          ☐ **MONEY DEMANDED IN COMPLAINT:** $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28USC Sec1B31 - cause of action arises in part out of the laws of the United States

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☑ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | | ☐ 230 Rent Lease & Ejectment | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | | ☐ 240 Torts to Land | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | | ☐ 245 Tort Product Liability | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | | ☐ 290 All Other Real Property | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number:   CV07-03001 DSF (AGRx)

CV-71 (07/05)   CIVIL COVER SHEET   Page 1 of 2

**UNITED** **ATES DISTRICT COURT, CENTRAL DIST** **.T OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b).  RELATED CASES:**  Have any cases been previously filed that are related to the present case?  ☑ No   ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
   ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

    Vermont


List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐  Check here if the U.S. government, its agencies or employees is a named defendant.

    Ventura County, California


**List the California County**, or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.

    Ventura County, California


**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date   5/3/07

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

PAUL T. WAGNER
6363 Woodway, Suite 910
Houston, TX 77057
713-783-7077

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| JUDY DURGIN, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV07-3001 DSF(AGRx) |
| v. | |
| KEVIN W. SHARER, ET AL, | **NOTICE OF** |
| | ☐ **Filing Fee Due on Pro Hac Vice Application** |
| DEFENDANT(S). | ☑ **Pro Hac Vice Application and Filing Fee Due** |

To: PAUL T. WAGNER

Please take notice that:

☐ Your *Pro Hac Vice* application, filed / lodged on _____ has been filed and granted by the court. As of today's date, the court has not yet received the application fee of $185.00. Please remit the fee and this notice immediately.

☐ Your *Pro Hac Vice* application has not been received by the court. Please return your completed application (form enclosed) along with the $185.00 fee and this notice immediately.

Please complete the **"Return"** portion of this form and return it and your fee in the form of a cashier's check, certified bank check, business or corporate check, government issued check, or money order drawn on a major America bank or the United States Postal Service, made checks payable to "U.S. District Court". The Clerk's Office will also accept credit cards (Mastercard/Visa, Discover, American Express) for filing fees and miscellaneous fees. Credit card payments may be made at all payment windows where receipts are issued. Mail fee and/or application to:

Clerk, U.S. District Court
Attn: Fiscal
312 N. Spring Street, Rm. G-8
Los Angeles, CA 90012

Clerk, U. S. District Court

5/7/07 _____  By Roel Reyes
Date                              Deputy Clerk

MAY 14 2007

*NOTE:* *The judge to whom this case is assigned will be notified if the fee, completed application or notification of active membership in the Central District of California or proof of payment is not received within thirty (30) days of the date of this notice.*

## RETURN

Please check applicable box and return this notice with referenced documentation and/or fee.:

☐ I am currently an active member of the California State Bar and am enclosing an admission application for the United States District Court, Central District of California, and the fee instead of the *pro hac vice* application. Application for admission may be obtained from the court's website at **www.cacd.uscourts.gov**. Please include your California State Bar number on all subsequent documents filed (Local Rule 11-3.8).

☐ I am an active member of the bar for the United States District Court, Central District of California. My California State Bar number is _____. *(Note: Only if this section applies to you, please fax this to the Attorney Admission Clerk at (213) 894-2342).*

☐ My *pro hac vice* fee of $185.00 is enclosed.

☐ My *pro hac vice* application and fee are enclosed.

☐ My *pro hac vice* application is enclosed. The fee is not enclosed because I am an attorney for the United States, _____ *(please indicate the department or agency name).*

☐ My *pro hac vice* fee was previously paid. *(Please fax proof of payment to the Fiscal Section at (213) 894-4535.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

### CV07- 3001 DSF (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.